UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.

| | |
|---|---|
| ANDRE CRUZ, MITCHELL BRYON PAZANKI, DAYANE TESSINARI, and FERNANDA NUNES FERREIRA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> AMERICAN HONDA MOTOR, CO., INC., <br><br> Defendants. | <u>CLASS ACTION</u> <br><br> **JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Andre Cruz Mitchell Bryon Pazanki, Dayane Tessinari, and Fernanda Nunes Ferreira ("Plaintiffs"), on behalf of themselves and all other similarly situated members of the below-defined Nationwide Class and State Class they respectively seek to represent (collectively, the "Class"), bring this action against Defendant AMERICAN HONDA MOTOR, CO., INC., a corporation, ("Honda" or "Defendant"), upon personal knowledge as to the factual allegations pertaining to themselves and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I.      INTRODUCTION

1.      Plaintiffs bring this action individually and on behalf of a class of similarly situated owners and lessees of Honda CR-V (model years 2017-2019) and Honda Accord (model years 2016-2019).

2.      Honda is one of the most popular automobile brands in the United States.  Honda's success in the automobile industry is a result of its extensive and consistent marketing message that its vehicles are safe, reliable, and are manufactured with the highest level of quality.  However, while continuing to tout the quality, safety and reliability of its vehicles, Honda sold and/or leased millions of cars that suffer from a latent defect that results in the failure of the vehicles' ability to provide safe and reliable transportation to drivers.

3.      Honda CR-V (model years 2017-2019) and Honda Accord (model years 2016-2019) sold and leased in the United States (the "Class Vehicles"),[1] were delivered to consumers with an identical and inherent defect in the Class Vehicles' design and/or manufacturing process.

4.      Unbeknownst to consumers at the time of purchase, a latent defect known as parasitic draining existed in every Class Vehicle at the time the Class Vehicles left Honda's possession and control.  Parasitic draining occurs when electrical components in a vehicle fail to shut down once the vehicle is turned off, which in turn results in the continuous draining of power from the battery (the "Parasitic Drain Defect" or the "Defect.").

5.      The Parasitic Drain Defect results in the premature deterioration of the batteries in Class Vehicles as well as other component failures that directly impact safety and reliability.  The

---

[1]    Plaintiffs reserve the right to amend their definition of Class Vehicles to include additional Honda vehicles with the same inherent defect.

Defect often results in drivers left stranded with vehicles that will not start, sometimes at locations unknown to them and in potentially dangerous situations. The Defect also creates the risk of vehicles shutting off, or stalling without warning, and causes safety features such as emergency hazard lights and headlights to fail.

6.  Despite possessing exclusive knowledge of the Parasitic Drain Defect and the potential consequences that could occur as a result of the Defect at all relevant times, Honda repeatedly failed to disclose and instead actively concealed the Defect from Class members and the public, and continued to market and advertise the quality, safety and reliability of Class Vehicles.

7.  At the time of sale or lease of all Class Vehicles, Honda had exclusive knowledge of, and had been in exclusive possession of, information pertaining to the Defect, which was material to Plaintiffs and Class members, and thus had a duty to disclose the latent Defect at the point of sale or lease of the Class Vehicles. Instead, Honda concealed the Defect and failed to warn consumers of the common consequences that they would likely suffer as a result of the Parasitic Drain Defect. Additionally, Honda failed to offer a permanent and reliable repair of the Defect.

8.  Honda knew that it did not have an effective remedy to cure the Defect and the problems it caused, and once again did not disclose this to consumers. Instead, Honda employed the use of temporary fix solutions such as replacing dead batteries and updating the internal software of the Class Vehicles, actions that Honda knew did not remedy the Defect or make the Class Vehicles safe and reliable for consumers.

9.      As a result of the Parasitic Drain Defect, and as discussed in more detail herein, owners and lessees of Class Vehicles have reported a result of the spending money on repairs and other expenses such as roadside assistance when their vehicles were inoperable, jumper cable packs to use when the Defect has depleted the vehicle's battery, and battery chargers to ensure that their vehicles will start when needed.

10.     Further, the Defect substantially decreases the value of the Class Vehicles as there is no permanent or reliable solution that renders the Class Vehicles, safe, reliable and of the highest quality as touted by Honda.

11.     As a direct and proximate result of Honda's concealment of, and failure to disclose, the Parasitic Drain Defect, Plaintiffs and Class members: (1) overpaid for the Class Vehicles because the Defect significantly diminishes the value of the Vehicles; (2) have Vehicles that suffer component degradation; (3) have paid hundreds of dollars for repairs that do not provide a permanent or reliable solution to the Defect; and (4) are unable to have their Vehicles adequately repaired.

12.     As a result of Defendant's conduct, Class Vehicle owners and lessees have been deprived of the benefit of their bargain.  Plaintiffs and Class members have purchased and leased Class Vehicles that they would not otherwise have purchased or leased, or would have paid less for, had they known of the Defect at the point of sale.  Plaintiffs and Class members have consequently suffered ascertainable losses and actual damages as a result of Honda's unlawful conduct.  Accordingly, Plaintiffs and Class members seek actual and/or compensatory damages, including equitable relief seeking, *inter alia*, an order that the Class Vehicles are defective and injunctive relief preventing Honda from continuing its wrongful conduct, as alleged herein.

## II.    JURISDICTION

13.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d), because at least one Class member is of diverse citizenship from Honda, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest.

14.    The Court has personal jurisdiction over Honda because Honda has purposefully availed itself of the privilege of conducting business activities in the State of Florida.

## III.    VENUE

15.    Venue is proper in this District, pursuant to 28 U.S.C. §1391, because a substantial part of the acts or omissions giving rise to the claims brought herein occurred or emanated within this District, Honda has marketed, advertised, sold, and leased the Class Vehicles in this District, and Honda has caused harm to one or more Plaintiffs residing in this District.

## IV.    PARTIES

### A.    Plaintiffs

#### 1.    Andre Cruz

16.    Plaintiff Andre Cruz ("Plaintiff Cruz") is a citizen of Florida and resides in Deerfield Beach, Florida.  Plaintiff Cruz leased a 2016 Honda Accord in June 2016 from Hendrick Honda Pompano Beach, an authorized Honda dealer in Pompano Beach, Florida.  Plaintiff Cruz's class vehicle was covered by a written warranty.  When shopping for his Class Vehicle, Plaintiff Cruz researched and considered the reliability and quality of the make and manufacturer, including Honda's warranty.  Prior to leasing the Class Vehicle, Plaintiff Cruz heard, viewed, and/or read Honda marketing materials and advertisements including brochures, commercials, internet

advertisements as well as emails from Honda with lease offers that touted the quality, reliability and safety of Honda vehicles.

17.     Plaintiff Cruz relied on the information regarding the quality, safety, and reliability of the Class Vehicle conveyed in those marketing materials and advertisements in deciding to lease his Vehicle.  Honda failed to disclose the parasitic drain Defect to Plaintiff Cruz before he leased his Class Vehicle, despite Honda's knowledge of the Defect, and Plaintiff Cruz, therefore, leased his Vehicle on the reasonable, but mistaken, belief that it would be a high quality and reliable and safe vehicle.  Plaintiff Cruz would not have leased the Class Vehicle, or would not have paid as much for it, had he known the vehicle had a Defect that could drain the battery and leave him stranded without warning.

18.     After leasing the vehicle, Plaintiff Cruz experienced issues as a result of the Parasitic Drain Defect in which the battery died and required a jump at least three times. After experiencing this multiple times, Plaintiff Cruz knew something was not right as a new car should not experience this issue so often.  After experiencing a dead battery for the third time, Plaintiff Cruz brought his vehicle to Hendrick Honda to address the issue.  After performing a "load test," Honda replaced the battery in his vehicle.  Because the replacement battery does not resolve the Parasitic Drain Defect, Plaintiff Cruz has been left with a vehicle that he knows could have battery failure at any time and without warning and thus does not have a vehicle that is safe or reliable as advertised by Honda.

### 2.     Mitchell Bryon Pazanski

19.     Plaintiff Mitchell Bryon Pazanki ("Plaintiff Pazanski") is a citizen of Florida and resides in Jupiter, Florida.  Plaintiff Pazanski purchased a 2018 Honda Accord in 2020 from Delray

Honda, an authorized Honda dealer in Delray Beach, Florida.  Plaintiff Pazanski's class vehicle was covered by a written warranty.  When shopping for his Class Vehicle, Plaintiff Pazanski researched and considered the reliability and quality of the make and manufacturer, including Honda's warranty.  Prior to purchasing the Class Vehicle, Plaintiff Pazanski heard, viewed, and/or read Honda marketing materials and advertisements including brochures, commercials, and internet advertisements that touted the quality, reliability and safety of Honda vehicles.

20.     Plaintiff Pazanski relied on the information regarding the quality, safety, and reliability of the Class Vehicle conveyed in those marketing materials and advertisements in deciding to purchase his Vehicle.  Honda failed to disclose the Parasitic Drain Defect to Plaintiff Pazanski before he purchased his Class Vehicle, despite Honda's knowledge of the Defect, and Plaintiff Pazanski, therefore, purchased his Vehicle on the reasonable, but mistaken, belief that it would be a high quality and reliable and safe vehicle.  Plaintiff Pazanski would not have purchased the Class Vehicle, or would not have paid as much for it, had he known the vehicle had a Defect that could drain the battery and leave him stranded without warning.

### 3.     Dayane Tessinari

21.     Plaintiff Dayane Tessinari ("Plaintiff Tessinari") is a citizen of Florida and resides in Pompano Beach, Florida.  Plaintiff Tessinari purchased a 2019 Honda Accord in July 2019 from Hendrick Honda Pompano Beach, an authorized Honda dealer in Pompano Beach, Florida.  Plaintiff Tessinari's class vehicle was covered by a written warranty.  When shopping for her Class Vehicle, Plaintiff Tessinari researched and considered the reliability and quality of the make and manufacturer, including Honda's warranty.   Prior to purchasing the Class Vehicle, Plaintiff

Tessinari heard, viewed, and/or read Honda marketing materials and advertisements including commercials and internet advertisements that touted the reliability and safety of Honda vehicles.

22.     Plaintiff Tessinari relied on the information regarding the quality, safety, and reliability of the Class Vehicle conveyed in those marketing materials and advertisements in deciding to purchase her Vehicle.  Honda failed to disclose the parasitic drain Defect to Plaintiff Tessinari before she purchased her Class Vehicle, despite Honda's knowledge of the Defect, and Plaintiff Tessinari, therefore, purchased her Vehicle on the reasonable, but mistaken, belief that it would be a high quality and reliable and safe vehicle. Plaintiff Tessinari would not have purchased the Class Vehicle, or would not have paid as much for it, had she known the vehicle had a Defect that could drain the battery and leave her stranded without warning.

### 4.     Fernanda Nunes Ferreira

23.     Plaintiff Fernanda Nunes Ferreira ("Plaintiff Ferreira") is a citizen of Florida and resides in Pompano Beach, Florida.  Plaintiff Ferreira purchased a 2017 Honda CR-V in December 2017 from Hendrick Honda Pompano Beach, an authorized Honda dealer in Pompano Beach, Florida.  Plaintiff Ferreira's class vehicle was covered by a written warranty.  When shopping for her Class Vehicle, Plaintiff Ferreira researched and considered the reliability and quality of the make and manufacturer, including Honda's warranty.  Prior to purchasing the Class Vehicle, Plaintiff Ferreira heard, viewed, and/or read Honda marketing materials and advertisements including commercials and internet advertisements that touted the quality, reliability and safety of Honda vehicles.

24.     Plaintiff Ferreira relied on the information regarding the quality, safety, and reliability of the Class Vehicle conveyed in those marketing materials and advertisements in

deciding to purchase her Vehicle.  Honda failed to disclose the parasitic drain Defect to Plaintiff Ferreira before she purchased her Class Vehicle, despite Honda's knowledge of the Defect, and Plaintiff Ferreira, therefore, purchased her Vehicle on the reasonable, but mistaken, belief that it would be a high quality and reliable and safe vehicle.  Plaintiff Ferreira would not have purchased the Class Vehicle, or would not have paid as much for it, had she known the vehicle had a Defect that could drain the battery and leave her stranded without warning.

25.     After purchasing her vehicle, Plaintiff Ferreira experienced issues with her vehicle's battery.  As a result of the Parasitic Drain Defect, Plaintiff Ferreira's vehicle would not start after being turned off and had to jump her vehicle in order to operate the vehicle.  After she experienced a dead battery, she took the vehicle to Hendrick Honda where they replaced the vehicle's battery.  Because the replacement battery does not resolve the Parasitic Drain Defect, Plaintiff Ferreira has been left with a vehicle that is not safe or reliable as advertised by Honda.

**B.     Defendant**

**1.     American Honda Motor Company**

26.     Defendant American Honda Motor Company, Inc. is incorporated in California with its principal place of business in Torrance, California.  American Honda is the wholly owned North American subsidiary of Honda Motor Company Limited ("HML"), a Japanese corporation. Honda began operations in 1959 and is now responsible for sales, marketing, service, distribution, import and export of Honda and Acura products in the U.S.

27.     At its California headquarters, Honda combines sales, service, and coordinating functions for HML in North America, and is responsible for the manufacture, distribution, marketing, sales, and servicing of Honda vehicles in the U.S.  The decisions regarding the

marketing and sale of the Class Vehicles, the development of the internal technical service bulletins relating to the parasitic draw Defect in the Class Vehicles, and decisions regarding the disclosure or non-disclosure of the Defect were in whole or substantial part made by Honda at its California headquarters.  Additionally, Honda's warranty and customer service departments for Honda vehicle owners and lessees are operated from the Torrance headquarters.

## V.   FACTUAL ALLEGATIONS

### A.   Honda's Advertisement of Class Vehicles Centered on Quality, Safety & Reliability

28.   Honda has become one of the most popular automobile brands in the United States as a result of its extensive and consistent marketing focused upon the quality, safety, and reliability of its vehicles.

29.   Honda's claims of excellence in quality, design, safety, and reliability are consistent themes in its promotional materials.

30.   In fact, Honda has an entire section on its website entitled "safety," where Honda touts the safety of its vehicles.

31.   On its website, Honda states "Honda is a mobility company – we move people. But, for us, safety is an enormous priority.  We don't just want to move you; we want to move you safely."

32.   Honda also touts that "Maximizing safety in our vehicles means knowing what to expect when the unexpected happens."[2]

---

[2]   *Safety*, HONDA, https://www.honda.com/safety (last visited May 24, 2021).

33.     The website goes on to say "This kind of flexibility and affordability allows Honda to make the road safer for everybody on it by engineering for worst case scenarios in an unprecedented way."[3]

34.     Honda touted its focus on safety on its Facebook page as well, stating that "[t]he future of mobility is all about human connectivity and increased safety."[4]

35.     On September 20, 2019, Honda issued a press release discussing "the automaker's deep-rooted and ongoing commitment to safety" and describing Honda's new "Safety for Everyone" campaign.  Honda explains that "'Safety for Everyone' represents Honda's unique approach to safety – that everyone sharing the road should be able to safely and confidently enjoy the freedom of mobility."

36.     Honda echoed its message regarding the quality, reliability, and safety of its vehicles in the marketing materials specific to the Class Vehicles.

37.     The brochure for the 2016 Honda Accord touts the vehicle's safety and reliability, claiming that it is "Helping protect precious cargo" and that its "Convenient features make driving a simpler task" and that its "suite of safety and driver-assistive technologies help free you to enjoy your driving experience."  One of the main slogans on the brochure tells drivers to "Boldly go."[5]

---

3       *Safety, Virtual & Real-World Tests*, HONDA, https://www.honda.com/safety/virtual-and-real-world-tests (last visited May 24, 2021).

4       *Honda*, FACEBOOK,   https://www.facebook.com/Honda/posts/10154964080719275   (last visited May 24, 2021).

5       *Honda         Accord         2016         Brochure*,         https://www.auto-brochures.com/makes/Honda/Accord/Honda_US%20Accord_2016.pdf (last visited May 24, 2021).

38.     Honda advertised the 2017 Honda Accord as "a legend in its time" and stated that "Every Accord is equipped with advanced safety features designed to help you and your passenger, mile after mile."  Once again, Honda claimed that the vehicle "makes driving a simpler, more enjoyable task."[6]

39.     On Facebook, Honda stated that "[s]afety and driver-assistive Honda Sensing™ technology comes standard in the sleek 2017 #AccordHybrid."[7]

40.     In its brochure for the 2018 Accord, Honda describes the vehicle as "[t]he most impressive Honda ever" and touted the vehicle's reliability by stating that it was "[b]uilt for what-if" and that it is "[a]t the forefront of safety."  Honda stated that "[e]very model comes standard with advanced safety features to assist and help protect you and your most precious cargo."[8]

41.     In an advertisement for the 2018 Accord, Honda focuses on the safety of the vehicles by showing off its many safety features and describes the vehicle as the "most impressive Honda ever."

42.     The brochure for the 2019 Accord touts the vehicle's safety and reliability by stating: "[w]hen you're always making moves, you need a car that can keep up.  Whether you're

---

[6]   *Honda        Accord        2017        Brochure*        https://www.auto-brochures.com/makes/Honda/Accord/Honda_US%20Accord_2017.pdf  (last   visited   May   24, 2021).

[7]   Honda                                Photos,                                FACEBOOK, https://www.facebook.com/Honda/photos/a.191101529274/10154827307769275/   (last   visited May 24, 2021).

[8]   *Honda        2018        Accord        Brochure*,        https://www.auto-brochures.com/makes/Honda/Accord/Honda_US%20Accord_2018.pdf  (last   visited   May   24, 2021).

getting away for the weekend or getting to the office early, don't just show up, show them who's boss" and "[w]hether you're driving or sitting in the passenger seat, feel confident in the latest in safety innovation from Honda."[9]

43.     In a TV commercial for the 2019 Accord entitled "Protect Life's Moments," Honda touts the safety of the vehicles by stating "2019 Accord Keeping Your Moments Safe."[10]

44.     In another advertisement for the 2019 Accord, Honda touts the vehicle as a "sweet ride with a suite of high tech safety features" and then features a woman describing the car as "safe, reliable, fun, feisty, and most importantly it has the technology of a beast."[11]

45.     Honda similarly touted the quality, safety and reliability of the CR-V despite knowledge that these vehicles suffered from the same inherent Defect.

46.     In the brochure for the 2017 CR-V, Honda touted that "[t]he bar has been raised, again" and described the CR-V as "a vehicle designed for a superior driving experience," and one that "makes for better exploration of the roads ahead."  Honda claims that the car has "a wealth of

---

[9]  *Honda 2019 Accord Brochure*, https://www.daltshondaorillia.com/pdf/2019-honda-accord.pdf (last visited May 24, 2021).

[10]  2019 Honda Accord TV Commercial, 'Protect Life's Moments' [T2], ISPOT.TV, https://www.ispot.tv/ad/ZMOA/2019-honda-accord-protect-lifes-moments-t2 (last visited May 24, 2021).

[11]  2019 Honda Accord TV Commercial, 'Ask Anyone: Favorite Tech' [T2], ISPOT.TV, https://www.ispot.tv/ad/Iuab/2019-honda-accord-ask-anyone-favorite-tech-t2 (last visited May 24, 2021).

standard features and driver and passenger conveniences" and "delivers more comforts and conveniences than ever."[12]

47.     Despite the presence of the Defect in the vehicle, Honda touted the CR-V's reliability with the slogan: "Because no matter where you're going, there's always more to do, more to see, and more to experience – every day."[13]

48.     Further, Honda stated that the vehicle provides "a stand-out experience" because "[e]very surface, every contour, and every feature has been thoughtfully designed to create a truly superior driving experience in every sense" and tells drivers they can "commute with confidence."[14]

49.     Honda similarly touted the 2018 CR-V as a safe and reliable vehicle.  In the brochure for the vehicle, Honda states that it "[s]et the bar high," and while highlighting the vehicle's many safety features, Honda again tells drivers they can expect to "[c]ommute with confidence" and that there is "[e]xcellence in every detail."[15]

50.     The 2019 CR-V was promoted also by Honda as a reliable vehicle with the slogan "Enhance Every Day," "Monday" through "Sunday[,] [p]eace of mind, from here to everywhere."

---

[12]  *Honda    2017    CR-V    Brochure*,    https://www.auto-brochures.com/makes/Honda/CR-V/Honda_US%20CR-V_2017.pdf (last visited May 24, 2021).

[13]  *Id*.

[14]  *Id*.

[15]  *Honda    2018    CR-V    Brochure*,    https://www.auto-brochures.com/makes/Honda/CR-V/Honda_US%20CR-V_2018.pdf (last visited May 24, 2021).

51.     In the brochure for the 2019 CR-V, Honda stated "[w]hen you do it all, it helps to have a car that does as well."  Honda continues to tout the vehicle's safety by stating "[w]ith intuitive technology and design, we've created a way forward that we can all feel good about. Whether you're driving or sitting in the passenger seat, feel confident in the latest in safety and innovation from Honda."[16]

52.     Honda's marketing of Class Vehicles touting the safety and reliability of the vehicles was an enormous success.

53.     Honda sold approximately 378,600 CRVs in the U.S. in 2017, 379,021 in 2018, 384,168 in 2019, and 323,502 in 2020.[17]  Honda sold approximately 322,655 Accords in 2017, 291,071 in 2018, 267,567 in 2019, and 199,458 in 2020.[18]

54.     Altogether, Honda has sold and leased millions of Class Vehicles which suffer from a serious Parasitic Drain Defect.  And, despite possessing knowledge of the Defect, Honda provided no warning to drivers of the Defect or the consequences that were likely to occur as a result.

---

[16]   *Honda 2019 CR-V Brochure*, https://www.daltshondaorillia.com/pdf/2019-honda-crv.pdf (last visited May 24, 2021).

[17]   Honda CR-V – US Sales Figures, GOODCARBADCAR, https://www.goodcarbadcar.net/honda-cr-v-sales-figures/ (last visited May 24, 2021).

[18]   Honda Accord – US Sales Figures, GOODCARBADCAR, https://www.goodcarbadcar.net/honda-accord-sales-figures/ (last visited May 24, 2021).

**B.      The Latent Parasitic Drain Defect Existed in Every Class Vehicle**

55.      Honda has knowingly sold and leased millions of Class Vehicles that suffer from a serious Parasitic Drain Defect.  All of the Class Vehicles at issue suffer from the same Defect and can easily be identified by their make and model year.

56.      When a vehicle is turned off, all of its electrical components (include many of a vehicle's safety features such as hazard lights and headlights) are powered by the vehicle's battery.  When a car is running on the other hand, these electrical components are powered by the vehicle's alternator, which charges the vehicles' battery as the car runs.

57.      Because the only source of power available when a vehicle is turned off comes from its battery, vehicles rely on electricity stored in its battery to start the engine as well as to operate many of the vehicle's safety features while the vehicle is turned off, including the hazard and head lights mentioned above, as well as door locks, interior lights, and internal diagnostic computer systems.

58.      A typical vehicle without the parasitic draining Defect contained in Class Vehicles, usually has enough electricity stored in its battery to start the vehicle and power these emergency features when needed.

59.      Once the engine is started, the alternator takes over as the power source and begins to charge the battery and replenish the amount of electricity stored in a battery for use of these features when the vehicle is turned off.

60.      If the battery is drained of its stored electricity as a result of a parasitic drain Defect as contained in Class Vehicles, the vehicle's engine will not turn on.  Thus, the alternator cannot take over the power of these safety features or charge the battery for future use.

61.     Repeated draining of a vehicle's battery progressively weakens a battery until ultimately the battery fails and needs to be replaced.  Even prior to complete failure of a battery, excessive draining can cause electrical components of the vehicle such as hazard lights, headlights, and taillights to fail without warning, including when the vehicle is being driven.

62.     When a vehicle contains a parasitic draining defect such as the Defect contained in Class Vehicles that repeatedly results in depleted batteries, the alternator is then forced to replenish the battery's power at a higher rate than usual, progressively reducing the amount of power generated by the alternator over time, until it too ultimately fails.  As the alternator's ability to generate power degrades, there is an increased risk that the vehicle's engine will unexpectedly stall while the car is being operated.

63.     Batteries used in vehicles today are estimated to last approximately six years or more, so long as the battery is not subject to excessive parasitic draining (as Class Vehicles were subject to as a result of the Defect).

64.     All of the Class Vehicles suffer from a Defect that continuously draws power from and ultimately drains the vehicle's battery at an unusually high rate resulting in the frequent need to be jump-started and/ or the need to replace the vehicle's battery much earlier and more often than in a vehicle that does not have the Parasitic Drain Defect.

65.     Additionally, as a result of the Defect, Class Vehicles are at increased risk of stalling while being driven and put higher levels of stress on the vehicle's alternator which in turn increases the risk that the alternator will need to be replaced.

66.     Moreover, due to the Defect, Class Vehicles are at an increased risk that many of its safety features will fail at a time when its driver will need them the most, when the engine is inoperable.

67.     Owners and lessees will continue to be faced with the ongoing inconvenience and expense of replacement parts and repair fees, emergency roadside assistance, towing, and the need to find alternative transportation until Honda provides a permanent and reliable solution to the Parasitic Drain Defect.

**C.     The Defect is a Safety Hazzard**

68.     The Defect contained in Class Vehicles not only renders the vehicles inoperable when the battery is depleted, but also poses substantial safety hazards to drivers.

69.     When the battery fails as a result of the Defect, drivers cannot start the car and are left stranded.  This can occur at any time and without any warning, and could leave the driver stranded in an unfamiliar or unsafe area, in an area where roadside assistance is not readily available, or in other dangerous circumstances such as inclement weather.

70.     Additionally, when the battery fails as a result of the Defect, none of the vehicle's electrical components are operable, which means that many safety features in the Class Vehicles that rely on power cannot be used.  This includes the vehicle's hazard lights, which are designed specifically to be used in situations where the vehicle becomes inoperable in order to increase the safety of the driver and inform others on the road that the driver is in need of assistance.

71.     Other electrical components of the car will too fail when the battery is depleted as a result of the Defect, such as car locks and windows.  If the car is locked at the time the battery fails, drivers may not be able to open their cars which could pose additional problems for the driver

- 18 -

if they have left their phone or wallet in the car and may leave a driver in a situation where he or she is unable to call for assistance.  If a window is left down in the car, the driver will not be able to close it if it begins to rain or snow and would not be able to protect him or herself or the inside of the vehicle from inclement weather.

72.     There are also safety hazards associated with the increased amount of stress placed on the Class Vehicle's alternator as a result of the Defect, which leaves drivers at an increased risk of stalling while operating their vehicles.

73.     Additionally, excessive draining can cause electrical components of the vehicle such as headlights and taillights to fail even when the vehicle is being driven.  Both of these scenarios put the driver at a much higher risk of getting into an accident.

74.     All of these issues could occur without warning as a result of the Parasitic Drain Defect, and pose significant safety hazards to drivers.

**D.     Honda Possessed Exclusive Knowledge of the Parasitic Drain Defect**

75.     On information and belief, Defendant was aware of the Defect and the risk it posed to Class Vehicle owners and lessees, through but not limited to: (1) Defendant's pre-sale testing; (2) National Highway Traffic Safety Administration ("NHTSA") complaints and notices; (3) consumer complaints posted on the internet; (4) consumer complaints made directly to Honda's customer service division; (5) dealership repair records and replacement parts sales data; and (6) warranty and post-warranty claims.

### 1.    Pre-sale Testing

76.    As an experienced and sophisticated car manufacturer, Honda conducts tests, including pre-sale durability testing, on vehicle components including the battery, to ensure that its vehicles' parts are free from defects and provide quality assurance.

77.    As part of Honda's Global Honda Quality Standard, Honda claims that "[w]e have to aim for 120% product quality" and states that "[t]o strengthen customer trust by offering products founded on safety and offering a new level of outstanding quality, Honda has created a quality cycle that continuously enhances quality at every stage encompassing design, development, production, sales and after-sales service."[19]

78.    "Honda has created the Honda Quality Cycle that continuously enhances quality at every stage, encompassing design, development, production, sales and after-sales service in order to realize products offering a new level of outstanding quality."[20]

79.    To that end, Honda states that it assures long-term reliability through "Rigorous Durability Testing."

> Honda subjects new and redesigned models to a rigorous regimen of long-distance durability testing before beginning mass production to verify that there are no quality issues.  Honda also disassembles vehicles used in the test drives into every single part and verifies that there are no quality issues through a process consisting of several thousand checks.  By accumulating data on the issues discovered through these test drives and detailed inspections as well as associated countermeasures, the Company is able to ensure a high level of quality and reliability.[21]

---

[19]    Honda Sustainability Report 2018, https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf (last visited May 24, 2021).

[20]    *Id.*

[21]    *Id.*

80.     As a result of its pre-sale "Rigorous Durability Testing" and other processes formalized in its Global Honda Quality Standard, Honda knew or should have known of the Defect and the risks and safety issues it posed to drivers.

### 2.     NHTSA Complaints

81.     As part of Honda's duty to identify potential defects in its vehicles determine whether vehicles or automotive components should be recalled due to safety concerns pursuant to the TREAD Act, 49 U.S.C. §30118, Honda is obligated to monitor the NHTSA databases for consumer complaints.  Numerous consumer complaints to NHTSA regarding the Defect in Class Vehicles show that Honda knew, or should have known, of the Defect.

82.     A sample of the consumer complaints concerning the Parasitic Drain Defect and thereby demonstrating Honda's knowledge of the Defect are included below.

83.     NHTSA complaints regarding the Defect in the 2016 Honda Accord:

April 5, 2017 **NHTSA ID NUMBER: 10970672**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 10970672

**Incident Date** April 4, 2017

**Consumer Location** REDWOOD CITY, CA

**Vehicle Identification Number** 1HGCR2F55GA****

**Summary of Complaint**

VEHICLE WOULD NOT START POSSIBLY DUE TO ALTERNATOR OR BATTERY MALFUNCTION AFTER BEING PURCHASED FOR ONE YEAR.

August 9, 2017 **NHTSA ID NUMBER: 11013956**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11013956

**Incident Date** December 15, 2016

**Consumer Location** BOERNE, TX

**Vehicle Identification Number** 1HGCR2F85GA****

**Summary of Complaint**

I AM UNABLE TO START MY CAR AFTER IT SITS FOR TEN DAYS TO TWO WEEKS OR MORE. THE BATTERY GOES DEAD AND MY FAMILY AND I ARE LEFT POTENTIALLY STRANDED. MY WIFE AND I TRAVEL FREQUENTLY AND RETURN TO A CAR THAT WON'T START DUE TO A PARASITIC DRAW ON THE BATTERY. THIS IS A SAFETY ISSUE AS YOU CAN IMAGINE FLYING HOME, TAKING THE BUS TO THE PARKING LOT AT THE AIRPORT AT 11:00 PM, GOING TO YOUR CAR AND FINDING A DEAD BATTERY WHICH PUTS OUR SAFETY IN PERIL. I TOOK MY CAR TO ONEIL HONDA IN OVERLAND PARK, KANSAS. THEY CHARGED THE BATTERY AND CHECKED IT OUT AND TOLD ME THAT EVERYTHING IS FINE. I ASKED ABOUT WHY THE BATTERY WENT DEAD AND THEY SAID THAT THIS IS NOW NORMAL WITH THE NEW HONDA ACCORDS DUE TO THE PARASITIC DRAW ON THE BATTERY WHEN THE CAR ISN'T RUNNING WHICH ULTIMATELY DRAINS THE BATTERY TO A POINT WHERE IT WON'T START. HAVING BEEN AN AUTO MECHANIC IN MY YOUNGER DAYS I COULDN'T BELIEVE MY EARS. I CALLED ANOTHER HONDA DEALER'S SERVICE DEPARTMENT IN THE KANSAS CITY AREA AND RECEIVED THE SAME COMMENT. THEN I PHONED THE HONDA DEALERSHIP IN SAN ANTONIO WHERE I PURCHASED THE VEHICLE AND AGAIN, WAS PROVIDED THE SAME INFORMATION.... "THIS IS NOW WHAT I CAN EXPECT ON MY NEW ACCORD, IF IT SITS FOR TEN DAYS OR TWO WEEKS THEN THE BATTERY WILL DIE". THE PARASITIC DRAW ON THE BATTERY IS PUTTING MY FAMILY AND I IN AN UNSAFE SITUATION AND I ASKED THAT YOU INTERVENE. I TRIED TO ADDRESS THIS WITH HONDA AMERICA BUT WAS NOT SUCCESSFUL WITH THE AGENT ON THE PHONE. I EVEN ASKED HER TO PICK A DEALER IN SAN ANTONIO, ANY DEALER, GET THEIR SERVICE MANAGER ON THE PHONE WITH US AND LETS SEE IF HE / SHE GIVES US A SIMILAR RESPONSE REGARDING THE PARASITIC DRAW. SHE REFUSED. NOW I FEEL THAT I NEED YOUR HELP. I HAVE HAD THIS PROBLEM SINCE LAST FALL AND IT HAS OCCURRED ON SEVERAL OCCASIONS. I WILL INDICATE AN APPROXIMATE DATE OF MY INITIAL VISIT / DISCUSSION WITH THE FIRST HONDA DEALER.

April 15, 2017 **NHTSA ID NUMBER: 10978620**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 10978620

**Incident Date** April 10, 2017

**Consumer Location** SIMPSONVILLE, SC

**Vehicle Identification Number** 1HGCR3F97GA****

**Summary of Complaint**

PURCHASED 2016 ACCORD TOURING IN MAY 2016. IN APRIL 2017 THE CAR WOULD NOT START - APPEARED TO BE A BATTERY ISSUE. HAD THE HONDA ROADSIDE SERVICE COME TO THE HOUSE, THEY JUMP STARTED IT, TOLD TO LET IT RUN/DRIVE IT FOR 1/2 HOUR. DID THAT. WENT SHOPPING AND WHEN I TRIED TO START IT AGAIN ELECTRONICS WENT CRAZY, WIPERS WENT ON THEIR OWN AND THE STOP BUTTON WOULD NOT TURN OFF THE CAR. HAD IT JUMPED AGAIN BY HONDA ROADSIDE. TOOK IT TO THE DEALER, THEY REPLACED THE BATTERY - SAID IT HAD A BAD CELL IN IT, SAID THERE WERE NO TECH SVC BULLETINS ON THE CAR AND SAID THERE WERE 100'S OF GROUND WIRES IN THIS CAR THAT MAY CAUSE A PROBLEM W/BATTERY PREMATURE FAILURE.

November 18, 2017 **NHTSA ID NUMBER: 11047161**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11047161

**Incident Date** November 17, 2017

**Consumer Location** GARDEN GROVE, CA

**Vehicle Identification Number** 1HGCR2F31GA****

**Summary of Complaint**

SECOND TIME ON THE LAST FOUR DAYS THAT MY CAR WILL NOT START. I TOOK IT IN FOR SERVICE AT EH HONDA AUTONATION IN COSTA MESA CA AND THEY TOLD ME THAT EVERYTHING CHECKED OUT FINE. I WAS WORKING IN LOS ANGELES FOUR DAYS LATER AND ONCE AGAIN THE CAR WOULDN'T START. THIS IS AFTER DRIVING A FEW SHORT DISTANCES AND THEN THE CAR JUST WONT TURN OVER. I HAVE HAD TO HAVE THE CAR JUMPED TWICE IN THE LAST FOUR DAYS. THIS IS A PROBLEM BECAUSE OF WHERE I WORK AND I CANNOT LET MY WIFE DRIVE THE CAR DUE TO NOT HAVING THE CONFIDENCE THAT THE CAR WILL START, ESPECIALLY IF SHE HAS THE KIDS WITH HER. I WILL BE TAKING IT IN AGAIN ON MONDAY AND SEE WHAT THEY HAVE TO SAY. I HAVE READ THAT THERE ARE PARTS DEALING WITH THE BATTERY THAT CAN NOT ONLY CAUSE STARTING ISSUES, BUT SHORTS IN THE ELECTRICAL SYSTEM. I UNDERSTAND THAT PROBLEMS OCCUR, BUT THE FACT THAT THIS IS THE SECOND TIME IN FOUR DAYS I STARTING TO WONDER IF HONDA IS NOW SELLING VEHICLES OFF THEIR NAME AND NOT THEIR QUALITY. NOT WILLING TO GIVE UP ON THEM JUST YET, BUT IT WILL DEPEND ON WHAT THEY DO TO FIX THIS ISSUE.

January 5, 2018 **NHTSA ID NUMBER: 11060671**
**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11060671

**Incident Date** August 21, 2017

**Consumer Location** CLAYTON, NC

**Vehicle Identification Number** 1HGCR2F85GA****

TL* THE CONTACT OWNS A 2016 HONDA ACCORD. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 17V418000 (ELECTRICAL SYSTEM). THE DEALER (VANN YORK HONDA, (336) 841-6200) INSPECTED THE VEHICLE, BUT MADE NO MENTION THAT THE REMEDY AND PART WERE UNAVAILABLE TO RECEIVE THE RECALL REPAIR AT THAT TIME. THE CONTACT LATER NOTICED THAT THE VEHICLE FAILED TO START. THE BATTERY WAS REPLACED BY THE CONTACT, BUT THE FAILURE PROGRESSED. MONTHS LATER, THE CONTACT RECEIVED A SECOND LETTER INDICATING THAT THE PARTS WERE AVAILABLE. THE DEALER (AUTOPARK HONDA, (919) 467-4747) WAS TO SCHEDULE AN APPOINTMENT TO DIAGNOSE THE VEHICLE AND ADDRESS THE RECALL REPAIR. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS NOT AVAILABLE. PARTS DISTRIBUTION DISCONNECT.

July 17, 2018 **NHTSA ID NUMBER: 11112042**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11112042

**Incident Date** July 15, 2018

**Consumer Location** EDINBURG, TX

**Vehicle Identification Number** 1HGCR2F55GA****

**Summary of Complaint**

MY BATTERY HAS A SHORTAGE-2016 WITH LESS THAN 40,000 MILES THIS IS CLEARLY A DEFECT

November 26, 2018 **NHTSA ID NUMBER: 11153677**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11153677

**Incident Date** September 1, 2018

**Consumer Location** Unknown

**Vehicle Identification Number** 1HGCR2F39GA****

**Summary of Complaint**

TL* THE CONTACT OWNS A 2016 HONDA ACCORD. AFTER DRIVING THE VEHICLE AND TURNING THE ENGINE OFF, THE BATTERY POWER WOULD DRAIN AND THE VEHICLE COULD NOT BE RESTARTED. AFTER REPLACING THE BATTERY WITH A NEW BATTERY, THE FAILURE CONTINUED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE MANUFACTURER AND LOCAL DEALER WERE NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 56,000.

April 11, 2019 **NHTSA ID NUMBER: 11195584**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11195584

**Incident Date** April 11, 2019

**Consumer Location** TURLOCK, CA

**Vehicle Identification Number** N/A

**Summary of Complaint**

TL* THE CONTACT OWNS A 2016 HONDA ACCORD. THE CONTACT STATED THAT THE VEHICLE'S BATTERY FAILED. THE DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS CONTACTED AND STATED THAT THE VEHICLE WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 17V418000 (ELECTRICAL SYSTEM). THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 36,639. THE VIN WAS UNAVAILABLE.

March 28, 2019 **NHTSA ID NUMBER: 11192228**
**Components: ELECTRICAL SYSTEM, ENGINE**
**NHTSA ID Number:** 11192228

**Incident Date** March 15, 2019

**Consumer Location** COVINA, CA

**Vehicle Identification Number** 1HGCR2F60GA****

**Summary of Complaint**

BATTERY HAS BEEN REPLACED 3 TIMES AND CONSTANTLY DRAINS DESPITE TURNING OFF AUTOMATIC LIGHTS AND AIR CONDITIONING TO UTILIZE LESS BATTERY POWER. TURNING OVER WILL CHOKE AT TIMES AND START BUT ABOUT EVERY TIME THAT I TAKE MY CAR IN FOR AN OIL CHANGE THE BATTERY POWER TESTS LOW.

May 25, 2019 **NHTSA ID NUMBER: 11209968**

**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11209968

**Incident Date** May 25, 2019

**Consumer Location** ALLEN, TX

**Vehicle Identification Number** 1HGCR2F52GA****

**Summary of Complaint**

BATTERY HAS BEEN REPLACED TWICE IN 1 YEAR

May 6, 2019 **NHTSA ID NUMBER: 11205817**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11205817

**Incident Date** May 6, 2019

**Consumer Location** OAKLAND, CA

**Vehicle Identification Number** 1HGCR2F81GA****

**Summary of Complaint**

CAR WILL NOT START AFTER SITTING IN THE PARKING LOT FOR 10 MINS WHEN NOTHING TURNED ON. THIS IS THE 2ND TIME IN 6 MONTHS. THE FIRST INCIDENT WAS IN DECEMBER 2017 IN BAY AREA CA, AND NOW IN PLEASANTON CA WITH TEMP ABOUT 60 DEGREES OUTSIDER.

April 26, 2019 **NHTSA ID NUMBER: 11203916**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11203916

**Incident Date** April 25, 2019

**Consumer Location** Unknown

**Vehicle Identification Number** 1HGCR2F58GA****

**Summary of Complaint**

I LEASED A NEW 2016 ACCORD SPORT IN MARCH 2016. I JUST RECENTLY PURCHASED IT OUT OF THE 3 YEAR LEASE. IN THE 2ND YEAR OF LEASE (12/08/2017) I WAS AT THE GAS STATION WITH THE CAR SHUT OFF, TRIED TO START IT AND IT WOULDN'T START. BATTERY WASN'T WORKING. (ORIGINAL HONDA BATTERY STILL IN IT). THE CAR WAS AT 80K MILES. TRIED TO JUMP

START AND IT WOULDN'T START. CALLED TO HAVE IT TOWED HOME, TOW DRIVER TESTED THE BATTERY AND JUMPED IT AND IT STARTED BUT WAS HAVING ISSUES SO HE SAID TO GET IT HOME. I REPLACED THE BATTERY IMMEDIATELY THAT NIGHT. (NEW STORE BOUGHT BATTERY) NO ISSUES UNTIL NOW (APRIL 2019). WAS DRIVING LAST NIGHT IN THE RAIN AND ALL 4 OF MY DASH LIGHTS CAME ON AT THE SAME TIME (ANTI-LOCK BREAK-ABS, TIRE PRESSURE-TPMS, TRACTION CONTROL, ELECTRIC POWER STEERING-EPS). I HAVE ASSOCIATED THIS ISSUE WITH SEVERAL DEALERS AND IT HAS BEEN LINKED TO THE BATTERY CAUSING THESE SENSORS TO TRIP AS THEY ARE NOT GETTING ENOUGH POWER. HUNDREDS OF COMPLAINTS FOR THIS SAME ISSUE! ONCE THE BATTERY IS REPLACED, THE PROBLEM GOES AWAY. I HAVE OWNED THIS CAR NOW FOR 3 YEARS EXACTLY AND THIS WILL BE THE 3RD BATTERY I HAVE HAD TO PUT IN THIS CAR, BUT THIS VIN IS NOT COVERED UNDER THE BATTERY RECALL? THE BATTERY RECALL (17V418000) IS FOR WATER GETTING INTO THE BATTERY CASE AND CAUSING SHORTS AND POSSIBILITIES FOR ELECTRICAL FIRES. SOMETHING ON THIS VIN MODEL IS HAVING SEVERE BATTERY ISSUES, POSSIBLY RELATED TO THE WATER WITH LAST NIGHTS INCIDENT, BUT 3 BATTERIES IN 3 YEARS IS UNACCEPTABLE. THIS IS A $27,000 VEHICLE. ALL BATTERY ISSUES NEED TO BE REVIEWED FOR RECALL ISSUES.

July 17, 2019 **NHTSA ID NUMBER: 11232911**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11232911

**Incident Date** December 5, 2018

**Consumer Location** SIERRA MADRE, CA

**Vehicle Identification Number** 1HGCR2F52GA****

**Summary of Complaint**

I HAD TO REPLACE THE BATTERY WITHIN THE FIRST YEAR OF ME OWNING THE VEHICLE. ABOUT 6 MONTHS AGO I STARTED HAVING THE SAME ISSUE WHERE MY BATTERY WAS DYING. IN ADDITION TO THAT MY.CAR STARTED MAKING A FUNNY NOISE. TURNS OUT I NEEDED MY TENSIONER/ALTERNATOR PULLEY REPLACED AND THAT IS WHEN THEY NOTICED THAT THE ALTERNATOR WAS NOT CHARGING CORRECTLY. IT WAS MEASURING AT 11 VOLTS INSTEAD OF THE NORMAL 14V. I HAD TO HAVE IT REPLACED ALONG WITH MY BELT TENSIONER. I SPENT 600 AND THEN I LEARNED THAT THERE WAS A RECALL ON HONDAS FOR THE SAME ISSUE BUT MY CAR WAS NOT INCLUDED IN THE LIST. I DON'T SEE WHY NOT WHEN IT WAS ALMOST THE IDENTICAL ISSUE. THIS IS THE FIRST CAR I HAVE EVER BOUGHT AND I BOUGHT A HONDA BECAUSE OF ITS REPUTATION FOR DEPENDABILITY. THE ALTERNATOR SHOULD NOT HAVE GIVEN OUT WITHIN THE FIRST THREE YEARS OF OWNING THE VEHICLE.

October 13, 2019 **NHTSA ID NUMBER: 11268149**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11268149

**Incident Date** October 1, 2019

**Consumer Location** MIAMI LAKES, FL

**Vehicle Identification Number** 1HGCR2F55GA****

**Summary of Complaint**

WHEN I GET IN MY CAR SOMETIMES TO START IT THE BATTERY IS DEAD I HAVE
TAKING IT TO AUTOZONE SO THEY CAN RUN TEST WITH THERE COMPUTER AND
EVERYTHING COMES OUT PERFECT IF I'M NOT MISTAKEN I THINK THE BATTERY
NEGATIVE VOLTAGE SENSOR IS DAMAGED

September 20, 2020 **NHTSA ID NUMBER: 11360118**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11360118

**Incident Date** September 19, 2020

**Consumer Location** RIVER RIDGE, LA

**Vehicle Identification Number** 1HGCT2B81GA****

**Summary of Complaint**

I JUST REPLACE THE BATTERY FOR THE 3RD TIME ON 9/19/2020. THIS IS A
PROBLEM FOR A CAR 4 YEARS OLD

January 31, 2021 **NHTSA ID NUMBER: 11390859**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11390859

**Incident Date** January 31, 2021

**Consumer Location** Unknown

**Vehicle Identification Number** 1HGCR3F08GA****

**Summary of Complaint**

IF THE VEHICLE IS NOT STARTED AND DRIVEN AT LEAST EVERY SECOND DAY. A
NO START CONDITION RESULTS. BATTERY IS NEW, THE SECOND ONE FROM
HONDA DEALER. CRANK/STARTER SPEED VERY LETHARGIC, ALL CONDITIONS,

REMOTE START INCLUDED. PURCHASED AN AFTER MARKET START BOOSTER TO RESOLVE DEAD BATTERY ISSUE. VEHICLE NO LONGER UNDER WARRANTY.

84.     NHTSA complaints regarding the Defect in the 2017 Accord:

July 11, 2017 **NHTSA ID NUMBER: 11004676**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11004676

**Incident Date** June 1, 2017

**Consumer Location** DELANO, CA

**Vehicle Identification Number** N/A

**Summary of Complaint**

I PURCHASED A NEW VEHICLE THRU A HONDA DEALERSHIP, WHICH IS 4 HOUR DRIVE FROM MY RESIDENCE. I'VE HAD TO GET VEHICLE JUMPSTARTED ON 4 OCCASIONS AND HAVE TAKEN VEHICLE TO A LOCAL HONDA DEALERSHIP TO GET IT INSPECTED UNDER WARRANTY TERMS. THE DEALERSHIP HAS ONLY REPLACED BATTERY TWICE YET HAS NOT BEEN ABLE TO PINPOINT PROBLEM. DRIVER SIDE DOOR LOCK/UNLOCK BUTTON ALSO HAS BEEN MALFUNCTIONING AND TEMPERATURE GAUGE HAS ALSO BEEN MALFUNCTIONING. I HAVE BEEN WORKING WITH HONDA FINANCE CORPORATION CASE MANAGER BY THE NAME OF KIA WHO HAS BEEN GIVING ME RUNAROUND ALONG WITH LOCAL DEALERSHIP, UNABLE TO SOLVE VEHICLE DEFECT/SAFETY ISSUE. THEY NOW SUGGEST I TAKE VEHICLE TO ORIGINAL HONDA DEALER OF PURCHASE WHICH IS A 4 HOUR DRIVE AND HAVE THEM REMOVE AFTER MARKET ALARM THEY INSTALLED WHICH MIGHT SUPPOSEDLY BE CAUSING ELECTRICAL PROBLEM. HOWEVER, IT IS SPECULATION AND DRIVING LONG DISTANCE IS A HARDSHIP FOR ME AND VERY UNFAIR. I FEEL LIKE LOCAL HONDA DEALER SHOULD FIX PROBLEM. THIS IS A HUGE CAR SAFEY ISSUE THAT HAS NOT BEEN RESOLVED. YOUR ASSISTANCE AND GUIDANCE IS VERY APPRECIATED.

January 18, 2018 **NHTSA ID NUMBER: 11063517**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11063517

**Incident Date** January 28, 2017

**Consumer Location** MEMPHIS, TN

**Vehicle Identification Number** 1HGCR3F07HA****

**Summary of Complaint**

TL* THE CONTACT OWNS A 2017 HONDA ACCORD. WHILE DRIVING 45 MPH, THE VEHICLE STALLED WITHOUT WARNING. THE CONTACT WAS UNABLE TO RESTART THE VEHICLE. ADDITIONALLY, THE CONTACT STATED THAT THE INTERIOR LIGHTING WOULD REMAIN ILLUMINATED, THE IN-DASH NAVIGATION SYSTEM AND OTHER INTERNAL AND EXTERNAL LIGHTING WOULD BLINK OR FLASH INDEPENDENTLY. THE VEHICLE WAS TOWED TO AUTONATION HONDA (1990 COVINGTON PIKE, MEMPHIS, TN 38128, (901) 209-1283) TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THERE WAS AN ELECTRICAL FAILURE THAT WAS ATTRIBUTED TO THE KEY FOB NOT BEING IN SYNC WITH THE VEHICLE'S ECU. THE MECHANIC WAS ABLE TO RESTART THE VEHICLE; HOWEVER, AFTER APPROXIMATELY THREE MONTHS OF DRIVING, THE FAILURE RECURRED. AFTER THE THIRD FAILURE, THE VEHICLE WAS TOWED BACK TO THE DEALER. THE MECHANIC WAS UNABLE TO RESTART THE VEHICLE. THE CONTACT WAS INFORMED THAT SEVERAL WIRING HARNESSES HAD MELTED AND NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED, BUT THE CONTACT WAS CONCERNED THAT THE FAILURE COULD RECUR. THE CONTACT WAS INFORMED BY THE SERVICE DEPARTMENT THAT THEY WERE UNABLE TO GUARANTEE THAT THE FAILURE WOULD NOT RECUR AND TO GET RID OF THE VEHICLE PRIOR TO THE WARRANTY EXPIRING. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 80. *TT *TR

February 6, 2019 **NHTSA ID NUMBER: 11174885**
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11174885

**Incident Date** February 2, 2019

**Consumer Location** PRAIRIEVILLE, LA

**Vehicle Identification Number** 1HGCR2F12HA****

**Summary of Complaint**

OVER THE LAST SEVERAL DAYS THE CAR WOULD NOT START WITHOUT REQUIRING A JUMP FOR THE BATTERY. THEN IT WOULD RUN, BUT ONCE THE CAR WAS OFF AND HAD TO BE RESTARTED IT WOULD REQUIRE ANOTHER JUMP. HAD THE BATTERY TESTED AND BROUGHT THE CAR TO DEALERSHIP AND THEY STATE NOTHING IS WRONG WITH THE VEHICLE. (IT STARTED THERE NO PROBLEM). IT RAN FINE FOR THE NEXT FEW DAYS, BUT CURRENTLY ITS PARKED AND WON'T START. THE ONLY LIGHTS THAT DISPLAYED WAS THE EPS WHICH TURNED OFF SHORTLY AFTER THE CAR STARTED.

February 14, 2019 **NHTSA ID NUMBER: 11180194**
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER, ENGINE**
**NHTSA ID Number:** 11180194

**Incident Date** October 10, 2018

**Consumer Location** ASTORIA, NY

**Vehicle Identification Number** 1HGCR2F7XHA****

**Summary of Complaint**

BATTERY DIED AFTER LESS THAN 2 YEARS OF USE. NEEDED TO REPLACE. NO
ELECTRICAL USE OF THE VEHICLE, PEP BOYS SAYS ITS A COMMON ISSUE WITH
NEW HONDAS. NEEDED TO TOW CAR AND DANGEROUSLY TURNED OFF IN THE
MIDDLE OF THE STREET WHEN THE BATTERY DIED.

85.     NHTSA complaints regarding the Defect in the 2018 Accord:

December 4, 2018 **NHTSA ID NUMBER: 11155848**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11155848

**Incident Date** December 3, 2018

**Consumer Location** PAWCATUCK, CT

**Vehicle Identification Number** 1HGCV1F3XJA****

**Summary of Complaint**

LAST SERVICE CHECK, APPROX 1 WEEK, SHOWED BATTERY PARTIALLY
DISCHARGED (MARKED AS "FAILED" AND "REPLACE" ON THE SERVICE REPORT.
NO APPARENT REASON. TODAY, AFTER A RAINY DAY AND NOT USING THE CAR
THE DAY BEFORE, FOUND THE CAR LOCKED AS ALWAYS BUT ALL FOUR
WINDOWS WERE DOWN. THIS IS THE SECOND OCCURRENCE. THE FIRST TIME
WAS 2 MONTHS AGO WHEN A NEIGHBOR CALLED TO TELL ME THE WINDOWS
WERE DOWN. THE CAR WAS LOCKED THEN AS WELL, IT WAS ALSO AFTER A
RAINY DAY. IN BOTH OCCURRENCES, THERE WAS NO WATER IN THE VEHICLE OR
ON THE SEATS.

November 11, 2020 **NHTSA ID NUMBER: 11374134**
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11374134

**Incident Date** November 2, 2020

**Consumer Location** DALLAS, TX

**Vehicle Identification Number** 1HGCV1F42JA****

**Summary of Complaint**

I HAVE CHANGED TWO BATTERIES SINCE I BOUGHT IT FIRST BATTERY THAT IT CAME WITH COMPLETELY DIED AND COULDN'T EVEN GET A JUMP. CHANGED IT AND NOW I HAVE TO KEEP GETTING JUMP EVERYDAY. MY WINDSHIELD HAS ALSO CRACKED TWICE FROM PASSENGER SIDE TO DRIVER SIDE. NO PUNCTURE MARK INDICATING SOMETHING HIT IT.

February 3, 2021 **NHTSA ID NUMBER: 11394473**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11394473

**Incident Date** August 21, 2019

**Consumer Location** TAMPA, FL

**Vehicle Identification Number** 1HGCV1F44JA****

**Summary of Complaint**

THIS IS A LEASED 2018 HONDA ACCORD, THE VEHICLE HAS 8000 MILES ON IT. THE SAFETY PROBLEM ON THIS VEHICLE IS THAT THE ELECTRIC SYSTEM HAS SHORTED 5 BATTERIES AND HAS LEFT ME STRANDED IN VARIOUS LOCATIONS, LENDING TO UNSAFE CONDITIONS. THE HONDA DEALER HAS REPLACED 5 BATTERIES ON MY VEHICLE AND NOW MY CAR HAS BROKEN-DOWN AGAIN MAKING IT SIX SHORTED BATTERIES ON A VEHICLE THAT BARELY HAS 8K MILES. WHEN I TALKED TO KYLE LAMPP, ASSISTANT SERVICE MANAGER AT BRANDON HONDA, HE STATED HONDA CORP. KNOWS ABOUT THE ELECTRIC PROBLEMS AND THEY ARE UNWILLING TO ADDRESS IT BECAUSE OF COST. BELOW ARE THE DATES OF SERVICE REPAIRS WITH INCLUDED INVOICE NUMBERS: 8/21/19 SERVICE# 514010 11/13/19 SERVICE# 531130 1/22/20 SERVICE# 544284 8/16/20 SERVICE#578092 11/19/20 SERVICE# 594896

April 2, 2021 **NHTSA ID NUMBER: 11406125**
**Components: POWER TRAIN, ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11406125

**Incident Date** June 1, 2020

**Consumer Location** LEXINGTON, KY

**Vehicle Identification Number** 1HGCV1F36JA****

**Summary of Complaint**

TL* THE CONTACT OWNS A 2018 HONDA ACCORD. THE CONTACT STATED THAT OCCASIONALLY THE VEHICLE WAS DIFFICULT TO START-UP. ADDITIONALLY, WHILE DRIVING AT UNDISCLOSED SPEEDS, THE VEHICLE WOULD LOSS MOTIVE POWER AND STALL WITHOUT WARNING. THE VEHICLE WAS TAKEN TO DON JACOBS HONDA (2699 REGENCY RD, LEXINGTON, KY 40503) HOWEVER, THE MECHANIC WAS UNABLE TO DUPLICATE THE FAILURE. THERE WAS NO DTC CODES RETRIEVED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE CONTACT WAS INFORMED THAT THE VEHICLE NEEDED TO BE DIAGNOSED TO BE COVERED UNDER THE WARRANTY. IF NOT, THE CONTACT NEEDED TO PAY OUT OF POCKET FOR THE REPAIR. THE APPROXIMATE FAILURE MILEAGE WAS 40,000.

86.    NHTSA complaints regarding the Defect in the 2019 Accord:

September 25, 2020 **NHTSA ID NUMBER: 11361076**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11361076

**Incident Date** September 21, 2019

**Consumer Location** CINCINNATI, OH

**Vehicle Identification Number** 1HGCV1F47KA****

**Summary of Complaint**

WHEN I WENT TO START MY CAR AFTER PARKING IT IN A PARKING LOT, MY CAR WOULDN'T START. THE CONTROL PANEL WAS FLASHING ON AND OFF AND STATED THAT THERE WAS AN ISSUE WITH THE BRAKE SYSTEM AND TO SEE MY DEALER. I HAD THE CAR TOLLED TO HONDA. AFTER INSPECTING THE CAR, THEY TOLD ME THERE WAS A DEFECTIVE CELL IN THE BATTERY AND THEY REPLACED THE BATTERY. I PURCHASED MY CAR BRAND NEW LAST YEAR IN 2019 YET THIS DEFECTIVE BATTERY CAUSED ME TO BE STRANDED, WHICH I DON'T EXPECT TO HAPPEN WITH AN ESSENTIALLY NEW CAR.

87.    NHTSA complaints regarding the Defect in the 2017 CR-V:

June 15, 2017 **NHTSA ID NUMBER: 10995344**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 10995344

**Incident Date** March 26, 2017

**Consumer Location** BURBANK, CA

**Vehicle Identification Number** 2HKRW1H89HH****

**Summary of Complaint**

TL* THE CONTACT OWNS A 2017 HONDA CR-V. WHILE THE VEHICLE WAS PARKED, IT FAILED TO START WITHOUT WARNING. THE FAILURE WAS PERSISTENT. THE VEHICLE WAS TOWED TO A LOCAL DEALER (ROBERTSON HONDA 5841 LANKERSHIM BLVD, NORTH HOLLYWOOD, CA 91601), BUT THE CAUSE OF THE FAILURE COULD NOT BE DETERMINED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 1,200.

August 18, 2017 **NHTSA ID NUMBER: 11016279**
**Components:** ELECTRICAL SYSTEM
**NHTSA ID Number:** 11016279

**Incident Date** August 18, 2017

**Consumer Location** HAWTHORNE, NJ

**Vehicle Identification Number** 2HKRW2H56HH****

**Summary of Complaint**

MY FIRST PROBLEM OCCURRED 3 MONTHS AFTER I HAD MY NEW CAR(@ 5609 MILES)....THE FIRST INCIDENT CAME OUT OF THE BLUE - ON MAY 11TH, 2017 I USED MY CAR AT 1 PM AND WHEN I TRIED TO LEAVE WORK AT 4:30 THE CAR DISPLAY FLASHED A BUNCH OF ODD MESSAGES AND THE CAR WOULDN'T TURN OVER. IT HAD A DEAD BATTERY! SO AN ONE AND A HALF LATER THE TOW TRUCK ARRIVED TO TAKE THE CAR TO THE DEALER AND I HAD TO GET A RIDE HOME AND TO AND FROM WORK THE NEXT DAY. HONDA SERVICE CALLED ME THE NEXT DAY AND SAID THAT THEY CHARGED THE CAR BATTERY AND THAT THE CAUSE WAS A PARASITIC DRAIN AND THAT I NEEDED TO PUT THE ELECTRIC BRAKE ON BEFORE I TURNED OFF THE CAR. THEY TOLD ME THAT HONDA WAS AWARE OF THIS ISSUES AND THAT THEY WERE WORKING ON A SOFTWARE FIX.... WELL TONIGHT (FRIDAY - AUG. 18TH, 2017) AS I WAS ABOUT TO GO OUT, THE CAR AGAIN HAS A DEAD BATTERY. NOW I'M STUCK HOME UNTIL TOMORROW WHEN I WILL HAVE TO SPEND SATURDAY TRYING TO GET THE CAR DRIVEABLE BY HONDA. SO I HAVE A NEW CAR (WITH 9300 MILES) I CAN'T DRIVE!!! WHAT HAPPENS IF I HAVE AN EMERGENCY? HONDA - IF YOU HAVE A FIX (WHICH I SEE ON SERVICE BULLETIN A17-032), WHEN CAN I GET MY CAR FIXED SO I CAN HAVE A CAR I CAN RELY ON? WHEN WILL YOU LIST MY VIN IN YOUR SERVICE BULLETIN A017-032 FOR PARASITIC BATTERY DRAW FROM VSA MODULATOR????? THIS IS NOT A GOOD BUSINESS PRACTICE AND NOT ONE I WOULD EXPECT FROM HONDA!

August 2, 2017 **NHTSA ID NUMBER: 11012414**

**Components: ELECTRICAL SYSTEM, SERVICE BRAKES**
**NHTSA ID Number:** 11012414

**Incident Date** August 2, 2017

**Consumer Location** VANCOUVER, WA

**Vehicle Identification Number** 2HKRW2H85HH****

**Summary of Complaint**

THIS INCIDENT WAS 4 MONTHS AFTWR PURCHASE. I PARKED A FRIEND'S HOUSE, AND THE BATTERY DRAINED OVER THE COURSE OF 3 HOURS. I CAME OUT AND START THE CAR, AND IT WOULDNT START. THE CAR KEEP ON MAKING THIS CONTINUOUS BEEPING NOISE EVERY TIME I OPEN AND CLOSE THE DOOR. IT USUALLY ONLY DO THAT IF THE KEY ISN'T NEAR THE CAR, BUT THIS TIME THE KEYS ARE ON ME. THE TRUNK WILL NOT OPEN NO MATTER WHAT YOU PRESS. I HAD TO GET MY FRIEND TO JUMP THE CAR WITH CABLES. WHILE I WAS DRIVING HOME, IT DIDN'T SHOW THE NORMAL SCREEN, BUT IT SHOWED SOME ANTI THEFT MESSAGE. ONCE I GOT HOME, IT TOLD ME TO HOLD DOWN FOR LONGER THAN TWO SECONDS TO HAVE THE SYSTEM RESTART. I DID THAT BUT NOTHING HAPPENED. I LEFT IT OVER NIGHT AND IT WAS NORMAL AGAIN THE NEXT DAY. RIGHT NOW, AS I'M WRITING THIS COMPLAINT, THERE'S ANOTHER PROBLEM. AN HOUR AGO, I PARKED AT A RESTAURANT'S PARKING LOT. I CAME OUT 40 MINUTES LATER AND CANNOT START THR CAR. THE DISPLAY IN FRONT OF ME IS SHOWING "BRAKE SYSTEM PROBLEM. " I'M WAITING THE THE TOW PEOPLE TO TOW MY CAR RIGHT NOW. IN SIX MONTHS I HAVE EXPERIENCED 2 MAJOR PROBLEMS WHICH CAUSE QUITE AN INCONVENIENCE.

July 13, 2017 **NHTSA ID NUMBER: 11005067**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11005067

**Incident Date** April 17, 2017

**Consumer Location** WAUWATOSA, WI

**Vehicle Identification Number** 2HKRW2H97HH****

**Summary of Complaint**

BRAND NEW 2017 CR-V TOURING, SECOND NIGHT HOME. BATTERY COMPLETELY DRAINED WHILE PARKED OVERNIGHT AND HAD TO CHARGE BATTERY TO START. TOOK TO DEALER, WHO DID A BATTERY TEST AND FOUND NO ISSUE. THERE IS A HONDA TSB CAMPAIGN, BUT HONDA TELLS ME MY VIN IS OUT OF RANGE AND IS NOT COVERED -- EVEN THOUGH THE SYMPTOMS ARE IDENTICAL.

THEY WILL NOT OFFER SERVICE UNTIL THE VIN IS WITHIN RANGE. REFERENCE
HONDA TSB-032 "PARASITIC BATTERY DRAW FROM VSA MODULATOR" HONDA
AMERICA SUPPORT SUGGESTED I REPORT THIS TO NHTSA, FOR SOME REASON.
STATED THAT IF THEY RECEIVE ENOUGH COMPLAINTS FOR A VIN RANGE IT
COULD BE EXPANDED. (THIS MAKES NO SENSE TO ME SINCE I WAS ON THE
PHONE WITH THEM.)

November 13, 2017 **NHTSA ID NUMBER: 11045525**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11045525

**Incident Date** November 12, 2017

**Consumer Location** SOUDERTON, PA

**Vehicle Identification Number** 2HKRW2H51HH****

**Summary of Complaint**

AFTER DRIVING TO LOCAL COSTCO ABOUT 15 MIN DRIVE, I PARKED AT TIRE
SERVICE CENTER TO REINFLATE TIRE. ONCE THEY HELPED ME, I TRIED TO
START CAR AND NOTHING HAPPENS. COSTCO TIRE TECHNICIAN LOOKED AT IT
AND DID NOT THINK IT IS BATTERY ISSUE SO I CONTACTED ROADSIDE
ASSISTANCE FROM HONDA. IT IS BARELY WINTER AND MY 2017 CR-V BOUGHT
LESS THAN 2 MONTHS AGO WITH 1850 MILES DOES NOT START. TOW TRUCK
DRIVER SAID HE HAS RESPONDED TO MANY ISSUES WITH BATTERY ON NEW
HONDAS. CAR DOES NOT START. CAN'T TELL IF ELECTRIC PARKING BRAKE IS
ENGAGED OR NOT. WILL TAKE IT (GET IT TOWED) TO NEAREST HONDA DEALER
THIS MORNING TO CONFIRM AND FIX ALL THE ISSUES. SO I WILL BE LATE TO
WORK TODAY AND WASTED MY SUNDAY DEALING WITH THIS TOO.

October 21, 2017 **NHTSA ID NUMBER: 11035424**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11035424

**Incident Date** October 18, 2017

**Consumer Location** BLOOMINGTON, MN

**Vehicle Identification Number** 5J6RW2H51HL****

**Summary of Complaint**

VEHICLE BATTERY DEAD AFTER SITTING FOR 3 HOURS. 3 WEEK OLD VEHICLE
WITH 690 MILES. CHARGED THE BATTERY AND DROVE TO THE DEALER. THE

TECHNICIAN CHECKED THE BATTERY, CHARGING SYSTEM AND STARTING SYSTEM. NO TROUBLE WAS FOUND. I GAVE A COPY OF HONDA SERVICE BULLETIN 17-032 COVERING 'PARASITIC BATTERY DRAW FROM THE VSA MODULATOR' TO THE 'SERVICE ADVISOR' AND ASKED HIM TO SHOW IT TO THE SERVICE MANAGER. THE SERVICE MANAGER SAID THAT MY VIN WASN'T COVERED BY THAT BULLETIN AND BECAUSE WHAT THEY LOOKED AT WAS IN WORKING ORDER THEY WOULDN'T DO ANYTHING ELSE TO ADDRESS THE CAUSE OF THE BEAD BATTERY. I TOLD THEM THAT THE ISSUE WASN'T ADDRESSED AND THAT I WILL HAVE THE VEHICLE TOWED TO THE DEALER WHEN IT HAPPENS AGAIN!

October 11, 2017 **NHTSA ID NUMBER: 11032872**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11032872

**Incident Date** October 10, 2017

**Consumer Location** SAN JUAN, PR

**Vehicle Identification Number** 5J6RW1H83HL****

**Summary of Complaint**

BATTERY DRAINS COMPLETELY FOR NO REASON WHEN VEHICLE IS PARKED. THE FIRST TIME IT HAPPENED THE DEALERSHIP REPLACED THE BATTERY. IT HAS HAPPENNED TWICE SINCE THEN AND DEALERSHIP DOES NOT PROVIDE A FIX.

August 24, 2017 **NHTSA ID NUMBER: 11019266**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11019266

**Incident Date** August 17, 2017

**Consumer Location** SAMMAMISH, WA

**Vehicle Identification Number** 5J6RW2H98HL****

**Summary of Complaint**

CAR BATTERY HAS DRAINED ON TWO OCCASIONS. CAR WON'T START. SYSTEM NEEDS ANTI THEFT RESET.

January 9, 2018 **NHTSA ID NUMBER: 11061486**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11061486

**Incident Date** December 29, 2017

**Consumer Location** EAGLE RIVER, WI

**Vehicle Identification Number** 2HKRW2H82HH****

**Summary of Complaint**

**DEATHS0**
VEHICLE WAS PARKED IN GARAGE FOR A FEW DAYS OVER HOLIDAYS. WHEN LEAVING TO MEET RELATIVES AT A RESTAURANT, THE CAR WAS COMPLETELY DEAD. BATTERY WAS AT 3.3 VOLTS. CALLED THE HONDA DEALER AND HE SUGGESTED HONDA'S FREE SERVICE; ALSO, MAYBE THE CAR SHOULD BE DRIVEN DAILY. (?!) I ASKED IF I COULD REMOVE THE BATTERY AND CHARGE IT WITH MY BATTERY CHARGER. HE SAID THAT WOULD BE OK. I CHARGED OVERNIGHT ON TRICKLE CHARGE. THE NEXT DAY THE BATTERY WAS AT 13 VOLTS. I PUT IT BACK IN THE CAR, WAITED 10 MINUTES FOR ALL SYSTEMS TO BOOT UP AND TOOK IT FOR A DRIVE. SEEMED ALRIGHT. LOOKING ONLINE, I NOTICED A HONDA TECHNICAL SERVICE BULLETIN (17-032) REFERRING TO PARASITIC BATTERY DRAIN AND MY VIN FIT THE PARAMETERS. I NOW HAVE AN APPOINTMENT WITH THE DEALER TO CHECK IT OUT. SURPRISINGLY, THE SERVICE MANAGER SAID THE DEALER HAD NOT HEARD OF THIS BULLETIN AND WAS NOT AWARE OF THIS PROBLEM. I HAD ASSUMED HONDA WOULD DISTRIBUTE ALL BULLETINS TO ALL DEALERS, BUT APPARENTLY THAT'S NOT THE CASE. HOPEFULLY THE SOFTWARE UPDATES WILL FIX THIS PROBLEM.

February 16, 2018 **NHTSA ID NUMBER: 11073304**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11073304

**Incident Date** February 16, 2018

**Consumer Location** ARLINGTON, VA

**Vehicle Identification Number** 2HKRW2H8XHH****

**Summary of Complaint**

CAR PURCHASED JULY 1, 2017. JAN 6, 2018 BATTERY DIED AFTER SITTING FOR ROUGHLY 2 DAYS. HONDA CHECKED BATTERY AND FOUND NO PROBLEMS WITH BATTERY OR ELECTRICAL SYSTEM. FRIDAY, FEB 16, 2018 SAME PROBLEM: DEAD BATTERY. CAR WAS SITTING FOR 3 DAYS PRIOR TO DISCOVERY. THERE ARE NO SUPPLEMENTAL ELECTRICAL ACCESSORIES.

April 16, 2018 **NHTSA ID NUMBER: 11088356**

**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11088356

**Incident Date** April 5, 2018

**Consumer Location** MILFORD, MI

**Vehicle Identification Number** 5J6RW2H52HL****

**Summary of Complaint**

MY VEHICLE WAS PARKED AT A AIRPORT PARKING LOT FOR 13 DAYS DURING A
TRAVEL TRIP. THE BATTERY WAS COMPLETELY DEAD AND WAS STARTED WITH
A JUMP. NO LIGHTS, ACT WERE LEFT ON DURING THIS PERIOD.

April 20, 2018 **NHTSA ID NUMBER: 11089119**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11089119

**Incident Date** April 10, 2018

**Consumer Location** RANCHO PALOS VERDES, CA

**Vehicle Identification Number** 2HKRW1H90HH****

**Summary of Complaint**

PURCHASED CAR 1/18. TOOK 10 DAY VACATION CAR WAS PARKED DURING THAT
PERIOD. CAR BATTERY WAS DEAD WHEN WE RETURNED. HAD AAA JUMP CAR
AND TOOK TO DEALER. BATTERY CHECKED AND TOLD BY DEALER IT WAS FINE
6 DAYS LATER BATTERY DEAD HAD HONDA SERVICE TOW CAR TO DEALER. HAD
FOUND HONDA TSB 17-032 ONLINE DESCRIBING A BATTERY DRAIN FROM VSA
MODULATOR. MADE COPY FOR DEALER BECAUSE THEY WERE 'UNAWARE OF
PROBLEM' ASKED THEM TO FOLLOW THE TSB SOFTWARE UPGRADE PROCEDURE
WHICH THEY DID BUT WHEN THEY TESTED BATTERY THERE WAS STILL A DRAIN
SO THEY REPLACED THE BATTERY AND INFORMED ME I NEED TO DRIVE CAR
EVERDAY TO KEEP IT CHARGED, THIS IS OUR SECOND CAR AND IS NOT DRIVEN
EVERYDAY AND WE TRAVEL WHICH MEANS THE CAR MAY NOT BE DRIVEN FOR
10 DAYS OR MORE THE SERVICE ADVISOR INDICATED THAT WE NEED TO
ACQUIRE A BATTERY CHARGER BECAUSE MOST LIKELY THE BATTERY WOULD
BE DEAD. IT SEEMS THAT THE 2017 CRV HAS AN ELECTRIC BRAKE SYSTEM
PROBLEM. IT PULLS ON THE BATTERY EVEN WHEN THE IGNITION IS OFF. IS
HONDA GOING TO ISSUE A RECALL ON THIS PROBLEM. EVERYTIME I GET IN THE
CAR I WONDER IF THE CAR WILL START AND THIS AN UNCOMFORTABLE
FEELING FOR A BRAND NEW CAR WITH ONLY 540 MILES ON IT.

April 25, 2018 **NHTSA ID NUMBER: 11090045**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11090045

**Incident Date** April 23, 2018

**Consumer Location** TOLEDO, OH

**Vehicle Identification Number** 2HKRW2H54HH****

**Summary of Complaint**

FIVE TIMES THE BATTERY DRAINED COMPLETELY WITH NOTHING ON, AFTER
SITTING UNUSED, GARAGED, OVER NIGHT OR AFTER ONE DAY UNUSED. AFTER
THE SECOND INCIDENT THE DEALER REPLACED THE BATTERY. AFTER THE
FOURTH INCIDENT, THE DEALER CHARGED THE BATTERY. AFTER THE FIFTH
INCIDENT, ONE WEEK LATER, THE DEALER CHARGED THE BATTERY AND
CLAIMED ONLY A .002 MILIAMP DRAW.

      88.    NHTSA complaints regarding the Defect in the 2018 CR-V:

March 6, 2018 **NHTSA ID NUMBER: 11076480**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11076480

**Incident Date** January 31, 2018

**Consumer Location** CHASKA, MN

**Vehicle Identification Number** 5J6RW2H80JL****

**Summary of Complaint**

WHILE ON VACATION, I HAD MY 2018 HONDA, CRV-EXL PARKED FOR NEARLY 2
WEEKS. ON OUR RETURN, I ATTEMPTED TO START THE VEHICLE. IT WOULD NOT
START AS THE NEW BATTERY WAS COMPLETELY DRAINED AND DEAD. LUCKILY
I HAD A CHARGER AND CHARGED THE VEHICLE FOR 2 HOURS. I WAS THEN ABLE
TO START THE VEHICLE AND IDLE IT. DURING IDLE THE DISPLAY INDICATED
PROBLEMS IN ALL OPERABLE FUNCTIONS. DURING A 45 MIN DRIVE THE SYSTEM
MUST HAVE RESET ITSELF AND THE VEHICLE OPERATED NORMALLY, THIS
CONDITION REPEATED ITSELF ABOUT 1 MONTH LATER WITH THE SAME
PROBLEMS. I AM SCHEDULE TO HAVE AN ELECTRICAL SYSTEM CHECK OF THE
CRV SOON AT THE DEALERSHIP WHERE THE VEHICLE WAS PURCHASED. I HOPE
THEY DISCIVER THE SOURCE OF THE PROBLEM.

August 4, 2018 **NHTSA ID NUMBER: 11115697**

**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11115697

**Incident Date** August 3, 2018

**Consumer Location** CONVERSE, TX

**Vehicle Identification Number** 5J6RW1H80HL****

**Summary of Complaint**

DRAINING BATTERY SUSPECTED PARASITIC DRAIN. THE VEHICLE WAS ATTEMPTED TO START YESTERDAY AND THE BATTERY HAS LOW CHARGED (~7 VOLTS FROM MULTI-METER). THE VEHICLE WAS SITTING IN THE GARAGE FOR ABOUT 2 DAYS SINCE LAST USE. JUMPSTARTED THE VEHICLE WITH A JUMPER CABLE AND WAS DRIVEN FOR ABOUT 2 HOURS. AFTER DRIVING THE BATTERY HAD ABOUT ~14 VOLTS READING. THE VEHICLE IS ~10500 MILES UNDER NORMAL USAGE. PURCHASED SEPT 2017. THIS IS THE SECOND TIME IT HAPPENED IN THE LAST 3 MONTHS. THE FIRST TIME WAS ~7-8K MILES.

August 6, 2018 **NHTSA ID NUMBER: 11118082**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11118082

**Incident Date** July 1, 2018

**Consumer Location** KLAMATH FALLS, OR

**Vehicle Identification Number** 2HKRW2H53JH****

**Summary of Complaint**

TL* THE CONTACT OWNS A 2018 HONDA CR-V. WHILE DRIVING 35 MPH, THE VEHICLE INADVERTENTLY CAME TO A STOP. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE CONTACT STATED THAT THE VEHICLE WAS ABLE TO RESTART. THE VEHICLE WAS TAKEN TO LITHIA HONDA IN MEDFORD (4095 CRATER LAKE HWY, MEDFORD, OR 97504, (541) 930-3021) WHERE THE CONTACT WAS INFORMED THAT THE ALTERNATOR NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 700.

October 8, 2018 **NHTSA ID NUMBER: 11139129**
**Components: POWER TRAIN, ELECTRICAL SYSTEM, ELECTRONIC STABILITY CONTROL**
**NHTSA ID Number:** 11139129

**Incident Date** October 6, 2018

**Consumer Location** HONOLULU, HI

**Vehicle Identification Number** 2HKRW1H58JH****

**Summary of Complaint**

CAR STALLS WHEN GOING UP PARKING RAMP, CAR DIES AT INTERSECTION, CAR
DOES NOT SENCE OBJECTS WHEN IN REVERSE, A BLUE LINE APPEARS WHEN
RAINING AND I REVERSE OBSTRUCTION VIEW, ELECTRONICS FREEZE AND
UNABLE TO USE TOUCH SCREEN...USUALLY HAPPENS WHEN RAINING CREATING
A SAFETY HAZARD. BRAKES FAILED (PEDAL FROZE) IN REVERSE. SALESMAN
SAID TO LET IT HAPPEN SEVERAL MORE TIMES BEFORE MAKING A SERVICE
APPOINTMENT. THE CAR HAS BEEN A PROBLEM EVER SINCE I GOT IT EARLIER
THIS YEAR...THERE IS ONLY 4,000 MILES ON IT AND SO FAR, THEY CHANGED THE
BATTERY...EXPLANATION I WAS GIVEN IS THAT HONDA HAS BAD BATTERIES.
THIS AFTER CHANGING OIL ONE WEEK PRIOR AND SERVICE REPORT INDICATED
GOOD BATTERY. ONE WEEK AFTER SERVICING, THE CAR DIED AND HAD TO BE
TOWED. THE SERVICE PEOPLE AT HONDA SAID IT WAS ALL DUE TO A BAD
BATTERY. BRAKES FAILED DUE TO BAD BATTERY???? STILL HAVING PROBLEMS,
CAR IS STALLING, PANEL FREEZES, SENSORS DON'T WORK...SALESMAN SAID NO
LOANERS AVAILABLE AND IF YOU WANTED A LOANER WHEN YOU SERVICE
CAR, SHOULD HAVE BOUGHT A LEXUS OR BMW. THIS AFTER I DESCRIBED ALL
THE PROBLEMS. REALLY UNHAPPY WITH THIS CAR. I BELIEVE IT'S A MAJOR
SAFETY ISSUE. .BRAKES FAILED, PANEL FREEZES, CAR STALLS...HELP!!!!! NOTE
THIS HAPPENED AS RECENTLY AS 10/5/18 BUT REALLY IT HAPPENED SEVERAL
TIMES SINCE I'VE HAD THIS CAR. I HAD IT TOWED ONCE WHEN A LIGHT
FLASHED, "BRAKE FAILURE" AND I WAS UNABLE TO START THE CAR. THE
BATTERY WAS CHANGED - THIS WAS IN AUGUST OF 2018.

January 2, 2019 **NHTSA ID NUMBER: 11164461**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11164461

**Incident Date** December 21, 2018

**Consumer Location** BRAMBLETON, VA

**Vehicle Identification Number** 5J6RW2H89JL****

**Summary of Complaint**

ON 12/21/18, I WENT TO START THE VEHICLE AND IT STARTED FLASHING ALL
KINDS OF ALERTS ON THE DASHBOARD. THE CAR WOULD NOT START. DOOR

LOCKS, TAILGATE WOULD NOT CLOSE VIA REMOTE OR OR BY PRESSING THE BUTTONS FOR THESE FUNCTIONS. NO INDICATION THAT THE LIGHTS WERE LEFT ON. 2 HOURS PRIOR THE CAR STARTED WITHOUT ISSUE. TOW WAS REQUESTED. TOW TRUCK DRIVER GAVE THE BATTERY A JUMPSTART AND TOLD ME TO LEAVE THE CAR RUNNING FOR 30 MINUTES WHILE THE SYSTEM RESET. THE SYSTEM DID NOT RESET. DASHBOARD ALERTS FOR TPMS PROBLEM, BRAKE SYSTEM PROBLEM, BRAKE HOLD PROBLEM AND VEHICLE STABILITY ASSISTANCE PROBLEM CONTINUED TO FLASH. THE VEHICLE WAS PARKED AT HOME IN DRIVEWAY FROM THE PREVIOUS EVENING. WE MOVED IT FORWARD TWO HOURS PRIOR TO ALLOW SPACE TO ROLL OUT OR TRASH CANS FOR GARBAGE COLLECTION. THE VEHICLE WAS PURCHASE ON JULY 30TH 2018 AND HAS 8322 MILES ON IT. NEVER EXPECTED TO HAVE AN ISSUE OF THIS SORT WITH A BRAND NEW VEHICLE. GRATEFUL THAT IT SHUTDOWN AT HOME RATHER THAN ON THE HIGHWAY.

July 2, 2019 **NHTSA ID NUMBER: 11229035**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11229035

**Incident Date** March 1, 2019

**Consumer Location** Unknown

**Vehicle Identification Number** 7FARW1H5XJE****

**Summary of Complaint**

TL* THE CONTACT OWNS A 2018 HONDA CR-V. WHILE DRIVING VARIOUS SPEEDS, AN ABNORMAL BEEPING NOISE WAS HEARD AND THE RADIO LIGHTING AND INSTRUMENT PANEL INDICATORS FLASHED ON AND OFF. THE VEHICLE WAS TAKEN TO JENKINS HONDA OF LEESBURG (8865 US-441, LEESBURG, FL 34788, (352) 815-2482) TO BE DIAGNOSED, BUT THE CAUSE OF THE FAILURE WAS UNDETERMINED. THE FAILURE RECURRED. THE VEHICLE WAS TAKEN BACK TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE BATTERY NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED; HOWEVER, THE FAILURE PERSISTED FOUR MORE TIMES. THE MANUFACTURER WAS NOTIFIED OF THE FAILURES. THE APPROXIMATE FAILURE MILEAGE WAS 23,000.

June 16, 2020 **NHTSA ID NUMBER: 11329094**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11329094

**Incident Date** June 10, 2020

**Consumer Location** DOWNEY, CA

**Vehicle Identification Number** 5J6RW1H53JA****

**Summary of Complaint**

WHILE DRIVING ON A CITY BOULEVARD AT ABOUT 35 MPH, THE NAVIGATION
SCREEN WENT BLANK. SECONDS LATER, THE FOLLOWING MESSAGE WAS
DISPLAYED: "ANTI THEFT SYSTEM. THIS SYSTEM HAS LOST POWER. PUSH AND
HOLD THE POWER BUTTON FOR MORE THAN TWO SECONDS TO ENABLE THE
SYSTEM." I ASSUMED THAT THE VEHICLE WAS DIRECTING ME TO HOLD THE
RADIO POWER BUTTON, SO I DID AND HELD IT FOR TWO SECONDS, BUT IT MADE
NO DIFFERENCE. I THEN PULLED OVER WHEN SAFE, TURNED THE VEHICLE OFF,
WAITED FOR 1 MINUTE AND THEN TURNED THE VEHICLE BACK ON. THE
NAVIGATION SCREEN WAS BACK ON TO NORMAL. THE INCIDENT OCCURRED ON
JUNE 10, 2020 AND THIS IS A 2018 MODEL. THE BATTERY THAT INITIALLY CAME
WITH THE VEHICLE DIED ON FEBRUARY, 2020 AFTER REQUIRING A JUMP START.
*TR

March 5, 2020 **NHTSA ID NUMBER: 11316406**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11316406

**Incident Date** March 1, 2020

**Consumer Location** ALLENTOWN, NJ

**Vehicle Identification Number** 2HKRW2H92JH****

**Summary of Complaint**

I WAS AWAY FOR 17 DAYS AND MY BATTERY DIED. WENT TO DEALER AND HE
SAID THIS IS NORMAL. HOW IS THIS NORMAL? IT'S DANGEROUS AND SHOULD
NOT HAPPEN! CAR IS 18 MONTHS OLD! THIS IS DANGEROUS TOO. LAST YEAR WE
WERE GONE 2 MONTHS AND WIFE'S CAR STARTED RIGHT UP. NEIGHBORS
WINTER IN FLORIDA - COME HOME AND CARS START UP. MY LAST CAR SAT 3
MONTHS AND STARTED RIGHT UP. THIS NEEDS TO BE FIXED! WE TRAVEL AND
CAR SITS AT THE AIRPORT / TRAIN. WHAT HAPPENS WHEN WE COME BACK AND
IT'S DEAD AND IT'S LATE / SNOW / ICE / BAD AREA. WORSE - I COULD NOT GET
INTO THE REAR HATCH (DEALER SAID NOPE - CAN'T - NO BYPASS) TO GET MY
JUMPER CABLES! AND CAR WAS IN A GARAGE (50+ DEGREES). GARAGE ALSO
MADE IT HARD TO JUMP AS WAS PULLED IN FORWARD! THIS IS ALL SCARY AND
MUST BE FIXED BUT DEALER SAYS NORMAL. HE SAID SOME DIE IN A COUPLE /
FEW DAYS AND IT'S NORMAL. THIS IS NORMAL? AFTER JUMPING IT I HAD TO
RESET SO MUCH / DASH WAS LIT UP - RADIO DIDN'T WORK. 17 DAYS IS NOTHING

FOR A CAR TO SIT AND DEALER SAID IT MAY HAVE DIED THE FIRST WEEK. THEN WHAT - NO ALARM - NOTHING. I LOOKED ONLINE AND MANY HAVE THIS ISSUE. FOR ALL I KNOW MY HONDA BATTERY DIED DAY 2 OR 3 AS MANY ONLINE SAY THEIRS DIES AFTER SITTING JUST A FEW DAYS.

December 14, 2020 **NHTSA ID NUMBER: 11383284**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11383284

**Incident Date** December 10, 2020

**Consumer Location** DECATUR, IL

**Vehicle Identification Number** 7FARW2H97JE****

**Summary of Complaint**

2018 HONDA CRV TOURING PURCHASE SEPTEMBER 8, 2018. CURRENTLY HAS 16,400 MILES. ON THURSDAY, DECEMBER 10, I WENT OUT TO START MY HONDA CRV TOURING IN THE GARAGE. IT WOULD NOT START. I CALLED THE HELPLINE TO HAVE A TOWING COMPANY COME TO TAKE THE CAR TO BOB BRADY HONDA DEALERSHIP IN DECATUR ILLINOIS. I CALLED BOB BRADY HONDA SERVICE CENTER THEY TOLD ME TO JUST HAVE THE TOWING COMPANY JUMPSTART MY CAR AND DRIVE IT INTO THE DEALERSHIP SERVICE DEPARTMENT. NOTE, THE TOWING COMPANY DRIVER INFORMED ME THAT THIS IS ABOUT THE 13TH HONDA 2018 2020 THAT HE HAS HAD TO JUMPSTART. SOME OF THE VEHICLES HE'S HAD TO REVISIT TO JUMPSTART. I DIDN'T DRIVE THE CAR AFTER COMING HOME THE REST OF THE DAY ON THURSDAY. THE CAR STARTED ON FRIDAY, DECEMBER 18, AT 11:30 AM. THE HONDA STARTED ON FRIDAY, DECEMBER 18 AT 3:30 PM. SATURDAY, DECEMBER 19, THE CAR STARTED AT 10:00 AM. THAT SAME DAY THE CAR STARTED AT 1:00 PM. ON SUNDAY, DECEMBER 13, I WENT OUT TO TRY TO START MY CAR AT 7:00 AM. MY CAR WOULD NOT START! IT IS MY UNDERSTANDING AT THE HONDA DEALERSHIP IN THE SERVICE DEPARTMENT THEY WILL NOT JUST FLIP OUT THE BATTERY UNTIL THEY FIRST TRY TO CHARGE IT AGAIN TO SEE IF THAT HELPS THE PROBLEM. IT IS NOW DECEMBER 14, 2020 AND I AM GOING TO CALL THE HONDA DEALERSHIP TO HAVE MY CAR TOWED IN TODAY FOR THE EXACT SAME PROBLEM OF THE BATTERY BEING DEAD! BOTH TIMES THAT THE CAR BATTERY DIED AS WELL IT WAS SITTING IN MY HEATED GARAGE. I'M NOT ABLE TO TAKE ANY PHOTOGRAPHS ON A DEAD BATTERY. BUT, I HAVE MADE A VIDEO OF EXACTLY HOW THE PROCEDURE TAKES PLACE WHEN I HAVE TRIED TO START MY CAR IN THE GARAGE.

January 11, 2021 **NHTSA ID NUMBER: 11387448**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11387448

**Incident Date** January 8, 2021

**Consumer Location** Unknown

**Vehicle Identification Number** 5J6RW1H98JL****

**Summary of Complaint**

OUR 2018 HONDA CRV HAS A DEAD BATTERY AT 21,000 MILES. ON THE INTERNET, I SEE MANY OTHER EXAMPLES OF THIS BATTERY LOSING CHARGE. IS THIS A COMMON PROBLEM? WE WERE LUCKY, AS THE CRV BATTERY DIED IN OUR GARAGE. BUT, IT COULD HAVE DIED IN A LESS FRIENDLY LOCATION. FROM WHAT I READ, THIS BATTERY IS PRONE TO PARASITIC CURRENT LOSS AT ANY TIME. THANK YOU. JIM BROMWELL CAROLINA SHORES, NC

89.    NHTSA complaints regarding the Defect in the 2019 CR-V:

January 27, 2019 **NHTSA ID NUMBER: 11172347**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11172347

**Incident Date** January 18, 2019

**Consumer Location** TRAVERSE CITY, MI

**Vehicle Identification Number** 2HKRW2H53KH****

**Summary of Complaint**

MY 2019 HONDA CR-V'S BATTERY DIES AFTER SITTING IN MY GARAGE FOR TWO DAYS. IT HAS ONLY 320 MILES ON IT.

February 25, 2019 **NHTSA ID NUMBER: 11182356**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11182356

**Incident Date** February 23, 2019

**Consumer Location** FREDERICK, MD

**Vehicle Identification Number** 7FARW2H56KE****

**Summary of Complaint**

PURCHASED 2019 HONDA CR-V ON FEBRUARY 9, 2019. DROVE ONLY TWICE IN THE FIRST 2 WEEKS. ATTEMPTED TO DRIVE FOR THE 3RD TIME (101 MILES ON

ODOMETER) ON THE 2 WEEK ANNIVERSARY OF BUYING, FEBRUARY 23, 2019 AND THE CAR WAS COMPLETELY DEAD! HONDA SENT TOW TRUCK, DRIVER CHARGED BATTERY. TOOK INTO HONDA TODAY FOR INSPECTION, THEY CHECKED THE BATTERY AND ONLY THE BATTERY AND SAID IT WAS FINE, NOTHING MORE THEY COULD DO. I WOULD HAVE LIKED THEM TO CHECK AND SEE WHAT DRAINED THE BATTERY. THE CAR SAT FROM TUESDAY TO SATURDAY, I WOULD EXPECT IT TO START WITHOUT AN ISSUE. SPOKE TO SALES ASSOCIATE WHO SAID THAT NEW CARS TEND TO DRAIN THE BATTERY IF THE WINDSHIELD WIPERS ARE LEFT IN THE ON POSITION. I DON'T KNOW WHY THAT WOULD EVEN BE A POSSIBILITY BUT IF THAT IS A FACT IT SHOULD BE CORRECTED.

March 11, 2019 **NHTSA ID NUMBER: 11185761**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11185761

**Incident Date** February 1, 2019

**Consumer Location** CUDDEBACKVILLE, NY

**Vehicle Identification Number** N/A

**Summary of Complaint**

TL* THE CONTACT OWNS A 2019 HONDA CR-V. AFTER TURNING THE VEHICLE OFF, THE BATTERY DRAINED AND THE VEHICLE COULD NOT BE RESTARTED. THE VEHICLE WAS TOWED TO MIDDLETOWN HONDA (520 RT. 211E, MIDDLETOWN, NY) WHERE THE BATTERY WAS REPLACED, BUT THE FAILURE CONTINUED. THE CONTACT WAS INFORMED THAT THE FAILURE WAS CAUSED BY AN EPA MODULE INSIDE THE VEHICLE, BUT NO REPAIR WAS AVAILABLE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 100.

March 29, 2019 **NHTSA ID NUMBER: 11192339**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11192339

**Incident Date** January 6, 2019

**Consumer Location** PLAISTOW, NH

**Vehicle Identification Number** 2HKRW2H85KH****

**Summary of Complaint**

IF THE CAR SITS FOR 24 + HOURS THE BATTERY DIES, I HAVE HAD THIS HAPPEN 6 TIMES NOW. CALLED DEALER 3+ TIMES, BROUGHT IT IN THEY FIRST SAID IT WAS THE BATTERY (WHICH WE ALL KNEW IT WAS NOT) BUT THEY PUT IN A NEW ONE THEY SAID. ANYHOW AS YOU ALREADY KNOW THIS IS AN ELECTRICAL ISSUE THAT NEEDS TO BE FIXED A.S.A.P.. DEALER NOW TELLS ME HONDA IS WORKING ON A FIX BUT IN THE MEAN TIME I HAVE HAD TO HAVE THE CAR JUMPED AND PAID FOR THIS AS WELL IT'S A MAJOR NUISANCE I WANT FIXED VERY SOON OR WANT MY MONEY BACK AND I WILL BUY ANOTHER CAR. THIS HAS BEEN GOIN ON SINCE I BOUGHT THIS CAR DEC. 28TH 2018

May 15, 2019 **NHTSA ID NUMBER: 11207890**
**Components: ELECTRICAL SYSTEM, ENGINE**
**NHTSA ID Number:** 11207890

**Incident Date** April 10, 2019

**Consumer Location** BROOKFIELD, OH

**Vehicle Identification Number** 2HKRW2H85KH****

**Summary of Complaint**

BRAND NEW 2019 HONDA CR-V EX-L: ELECTRICAL PROBLEM,4/10/19 AT 200 MILES, BATTERY COMPLETELY DEAD AFTER 2 DAYS OF NOT DRIVING BECAUSE COMPUTER PROGRAM ERROR. HONDA IS AWARE OF PROBLEM, BUT DOES NOT INSTRUCT THE DEALER TO FIX THE PROBLEM BEFORE SELLING ITS CARS. ENGINE PROBLEM AT 12 MILE AND UP, BOUGHT THE CAR IN MARCH,2019, SMELLED GASOLINE IN ENGINE OIL AT DIPSTICK, THE LEVEL WAS OVER MAX MARK BY 1/4", WAS TOLD THAT HONDA ALREADY IMPLEMENTED THE SOLUTION PRIOR TO SELLING 2019 MODEL TO THE PUBLIC. OBVIOUSLY, IT DID NOT SOLVE THE PROBLEM. DEALER WAS NO HELP, REFUSE TO ADMIT THAT THE OIL WAS OVER MAXIMUM AND MIXED WITH GASOLINE. 5-9-19 AT 1467 MILES, PAID TO CHANGE OIL AND FILTER AT DEALER AND STARTED TO MONITOR OIL CONDITION AND LEVEL CLOSELY. DISCOVERING THAT THE OIL LEVEL WAS STILL OVER MAXIMUM MARK BY 1/4" AFTER RETURNING HOME AND ENGINE WAS COOL. 5/13/19 AT 1600 MILES, DRAINED 1/4 QT. OF OIL OUT TO BRING THE LEVEL DOWN TO 1/8" BELOW MAX. MARK. DISCOVERED THAT THE OIL HAD ALREADY TURNED BLACK AFTER LESS THAN 200 MILES , 4 DAYS AFTER OIL CHANGE. SAVED SAMPLE OF THE BLACK OIL FOR DEALER. 5/14/19 AT 1694 MILES, SHOWED SAMPLE OF NEWLY CHANGED BLACK OIL TO THE DEALER SERVICE DEPT. WAS TOLD THAT THIS DIRTY OIL COULD BE TYPICAL OF THIS 1.5 TURBO ENGINE. DEALER ADMIT THIS TIME FROM THE OIL SAMPLE THAT THERE IS GASOLINE SMELL MIXED IN WITH ENGINE OIL. PAID FOR ANOTHER OIL AND FILTER CHANGE MYSELF. DEALER DID NOT OFFER TO DO ANYTHING EXCEPT TELLING ME TO CONTACT HONDA ENGINEERING. WILL CONTINUE TO MONITOR

THE OIL STATUS, AND POSSIBLY ASK FOR HELP FROM HONDA USA. HONDA IS NOT DOING THE RIGHT THING FOR THE CUSTOMER SINCE IT HAS KNOWN THIS SINCE 2017 MODEL YEAR. SERIOUSLY, CONSIDERING OTHER BRAND OF VEHICLE IN THE FUTURE. IF THE NEW OIL AND FILTER CAN GET COMPLETELY DIRTY IN LESS THAN 200 MILES, I WOULD BE REQUIRED TO CHANGE OIL EVERY WEEK!

July 14, 2019 **NHTSA ID NUMBER: 11231760**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11231760

**Incident Date** July 14, 2019

**Consumer Location** ORLANDO, FL

**Vehicle Identification Number** N/A

**Summary of Complaint**

BATTERY DIES OVERNIGHT. CAR HAS ONLY 1000 MILES AND I'VE HAD TO JUMP IT 3 TIMES PLAN TO CALL DEALER FOR WARRANTY WORK, BUT I SEE FROM OTHER POSTINGS THAT THIS IS AN UNRESOLVED ISSUE FOR HONDA. CALLING THEM ANYWAY. A NEW CAR SHOULD NOT BEHAVE THIS WAY.

August 30, 2019 **NHTSA ID NUMBER: 11252372**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11252372

**Incident Date** July 22, 2019

**Consumer Location** LITTLE RIVER, SC

**Vehicle Identification Number** 2HKRW1H91KH****

**Summary of Complaint**

TL* THE CONTACT OWNS A 2019 HONDA CR-V. THE CONTACT STATED THAT THERE WAS A SOFTWARE ISSUE THAT WAS CAUSING THE BATTERY NOT TO CHARGE AND WAS DRAINING THE BATTERY. THE VEHICLE WAS PARKED AT AN AIRPORT AND WOULD NOT START UPON THE CONTACT'S RETURN FROM A FIVE DAY TRIP. THE CONTACT HAD TO JUMPSTART THE VEHICLE. EAST COAST HONDA (8756A US HIGHWAY 17, BYPASS SOUTH, MYRTLE BEACH, SC 29588, (843) 492-5175) WAS CONTACTED AND STATED THAT THEY WERE AWARE OF THE ISSUE. THE MANUFACTURER STATED THAT THERE WERE NOT ENOUGH COMPLAINTS TO ISSUE A RECALL. THE MANUFACTURER SUGGESTED THAT THE

CONTACT UNHOOK THE BATTERY IF THE VEHICLE REMAINED PARKED MORE THAN A DAY. THE CONTACT PLANNED TO TAKE THE VEHICLE FOR DIAGNOSTIC TESTING ON AUGUST 30, 2019. THE FAILURE MILEAGE WAS 1,900.

November 12, 2019 **NHTSA ID NUMBER: 11279556**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11279556

**Incident Date** November 11, 2019

**Consumer Location** GREEN BAY, WI

**Vehicle Identification Number** JHLRW2H9XKX****

**Summary of Complaint**

WENT AWAY FOR A WEEKEND TRIP AND HADN'T DRIVEN THE CAR FOR 3 DAYS. CAME BACK AND THE BATTERY WAS TOTALLY DRAINED, HAD TO JUMP START THE CAR. IT HAS ROUGHLY 3,300 MILES ON THE ODOMETER. VEHICLE WAS STATIONARY.

January 13, 2020 **NHTSA ID NUMBER: 11299090**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11299090

**Incident Date** December 24, 2019

**Consumer Location** GREAT NECK, NY

**Vehicle Identification Number** 2HKRW2H88KH****

**Summary of Complaint**

THE SUV WOULD NOT START AFTER NOT BEING DRIVEN FOR 2 DAYS. ROADSIDE ASSISTANCE WAS CALLED AND THEY TESTED THE BATTERY AND IT WAS FULLY CHARGED, BUT THE SUV WOULDN'T START. THE SUV WAS JUMP STARTED AND THE ALARM STARTED GOING OFF AND THE HEAD UNIT HAD TO BE RESTARTED.

May 11, 2020 **NHTSA ID NUMBER: 11324191**
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11324191

**Incident Date** May 11, 2020

**Consumer Location** SAN JOSE, CA

**Vehicle Identification Number** 5J6RW1H8XKA****

**Summary of Complaint**

AFTER LEAVING VEHICLE IN GARAGE FOR 24 HOURS OR MORE, THEN ATTEMPTING TO START THE VEHICLE, VEHICLE WILL NOT START. AFTER USING BATTERY JUMP, VEHICLE WILL START AND RUN AS NORMAL. THIS HAS HAPPENED SEVERAL TIMES OVER THE PAST FEW MONTHS, EVEN WHEN VEHICLE IS RUN FOR COUPLE MILES OR MORE. *TR

July 7, 2020 **NHTSA ID NUMBER: 11337956**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11337956

**Incident Date** February 7, 2020

**Consumer Location** PHILO, CA

**Vehicle Identification Number** 5J6RW1H80KL****

**Summary of Complaint**

TL* THE CONTACT OWNS A 2019 HONDA CR-V. THE CONTACT STATED THAT AN HOUR AFTER PARKING THE VEHICLE, THE BATTERY WAS DRAINED. THE CONTACT STATED THAT THE FAILURE RECURRED SIX TIMES. THE VEHICLE WAS JUMP-STARTED. THE VEHICLE WAS TAKEN TO THURSTON HONDA LOCATED AT 2900 N STATE ST, UKIAH, CA 95482, THE FAILURE WAS DIAGNOSED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS REPAIRED. THE FAILURE MILEAGE WAS 6,000.*DT*JB

September 23, 2020 **NHTSA ID NUMBER: 11360689**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11360689

**Incident Date** August 17, 2020

**Consumer Location** WELLINGTON, FL

**Vehicle Identification Number** 7FARW1H81KE****

**Summary of Complaint**

TL* THE CONTACT OWNS A 2019 HONDA CR-V. THE CONTACT STATED THAT THE BATTERY BECAME DRAINED ON TWO SEPARATE OCCASIONS. THE VEHICLE WAS TOWED TO BRAMAN HONDA OF PALM BEACH LOCATED AT 5200 LAKE WORTH

RD, GREENACRES, FL 33463, WHERE THE BATTERY WAS REPLACED. THE FAILURE RECURRED AFTER TWO WEEKS AND A ROAD SIDE ASSISTANCE WAS CALLED AND RECHARGED THE BATTERY. THE CONTACT WAS INFORMED BY THE ROADSIDE SERVICE TECHNICIAN THAT IF THE VEHICLE WAS NOT DRIVEN UP TO 20 MILES PER DAY, THE BATTERY WOULD BE DRAINED. THE TECHNICIAN STATED THAT THE FAILURE WAS COMMON WITH THE MAKE AND MODEL AND THAT THE DEALER WOULD NOT DISCLOSE THAT INFORMATION. THE CONTACT CALLED THE SAME DEALER WHO CONFIRMED THE INFORMATION AND TOLD THE CONTACT TO BUY A JUMPER CABLE. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND PROVIDED A CASE NUMBER. THE FAILURE RECURRED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 8,900.

December 30, 2020 **NHTSA ID NUMBER: 11385578**
**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER**
**NHTSA ID Number:** 11385578

**Incident Date** December 27, 2020

**Consumer Location** ROCKY MOUNT, VA

**Vehicle Identification Number** 5J6RW2H88KL****

**Summary of Complaint**

ON AUGUST 28 I WENT TO START MY CAR AND IT WOULD NOT TURN ON. I CALLED THE DEALERSHIP AND THEY JUMPED IT AND THE CAR STARTED. THEY TESTED THE BATTERY AND IT WAS FINE BUT CHANGED IT ANYWAY. ON DECEMBER 23 IT WOULD NOT START AND HAD TO BE JUMPED. THIS HAPPENED AGAIN ON DECEMBER 26 AND 27. THE CAR IS CURRENTLY AT THE DEALERSHIP. THEY HAVE SAID NOTHING IS WRONG WITH THE BATTERY OR THE CAR EVEN THOUGH THIS HAS HAPPENED TO MULTIPLE 2019 CR-VS.

April 23, 2021 **NHTSA ID NUMBER: 11413556**
**Components: ELECTRICAL SYSTEM**
**NHTSA ID Number:** 11413556

**Incident Date** February 25, 2020

**Consumer Location** ROGERS, AR

**Vehicle Identification Number** 2HKRW2H95KH****

**Summary of Complaint**

STARTING AT ABOUT 7MONTHS VEHICLES BATTERY DIED AND UNABLE TO START LEAVING ME STRANDED. DEALER REPLACED BATTERY. CONDITION RETURNED 2 MORE TIMES OVER THE NEXT YEAR. DEALER DID A SOFTWARE UPDATE SERIVICE BULLENTIN SB19-039. DID NOT FIX THE PROBLEM. FAILED AGAIN. FEB 2021, DEALER REPLACED BATTERY AGAIN. HONDA FEILD TECHNICAL SPECIALIST SENT SPRFICILY TO DIAGANOSE VEHICLE CLAIMED NO PROBLEMS FOUND. AS OF 4/23/21 CURENTLY IN LEMON LAW SUIT WITH HONDA AMERICA OVER THIS ISSUE.

### 3.   Consumer complaints on online forums

90.   In addition to NHTSA complaints, customers complained about the Parasitic Drain Defect in Class Vehicles on various consumer websites and car forums.

91.   For example, there are multiple forums dedicated to complaints from consumers related to the Defect contained in Class Vehicles on carcomplaints.com.  These forums contain numerous posts from drivers that have suffered from battery draining issues, have had trouble starting their vehicles, or experienced stalling while driving their vehicles:

- "Battery has gone dead several times over the years. I don't drive all the time so I've gone out to a dead battery probably about 7 times in the last year."

- "Tried to start my car and all I got was clicking with lights flashing on the dash. I called the HondaLink Roadside Assistance. They sent AAA to jump my battery. The AAA guy says he's jumped a lot of 2017 CR-V's with the same problem. I am taking the car to the dealer to see what solution they have for me."

- "Battery is dead after 2 days sitting, sometimes overnight."

- "have 9000 mileage, yesterday was the 6th time that my battery has gone dead."[22]

---

[22] *Battery Keeps Going Dead, 2017 Honda CR-V*, CARCOMPLAINTS.COM, https://www.carcomplaints.com/Honda/CR-V/2017/electrical/battery_keeps_going_dead.shtml (last visited May 24, 2021).

92.     A separate forum on carcomplaints.com has several other complaints related to the

Defect in Class Vehicles:

- "Purchased 2019 "Honda Certified" CR-V EX-L with about 15,000 in August 2020. Since then I've had to have the battery jumped 4 times. First time I thought it was just a fluke – but now after searching and finding lots of complaints, I see I'm not alone. Have contacted the dealership for next steps to determine if the "software update" some have spoken of will help."

- "Problem first occurred after 4 months of ownership. Tried to start car, battery was dead, towed to dealer, they replaced battery. Six months later same problem, towed to dealer, they did a 'hard reset of ecm'. Six months later, same problem, towed to dealer, they still have the car. This car has about 8500 miles on it."

- "My 2019 Honda CRV 's battery continues to go dead. Only had the car 2weeks. Purchased the car Feb 5th, 2019,problem started Feb 20 and then again on the 28th of Feb. Dealer said it is a software problem that when car sits overnight the car automatically does a diagnostic anddrainthe battery. No fix yet and dealer does not know when there will be a fix. Dealer said they are working on a software update. In the meantime dealer said I need to keep the gas tank full and drive he [sic] car 20 minutes everyday. REALLY!!!! Dealer want me to use a trickle charger everyday to keep battery charged. I contacted American Honda and received a case number. I paid 30,000 for this car and am afraid to dive it. I am still waiting for Honda to fix this problem." In an update from March 21, 2019, the driver continued: "Just received a call from my car dealer they have a software update. Bringing my car in tomorrow the 22nd. for the computer update on my car. This is supposed to be the fix for the battery constantly going dead. I will keep you posted." An additional update posted on Mar 28, 2019 states "Had software update on March 22. Not sure if it has worked yet. I am lettting [sic] it sit for at least 5 to six days to see if it starts . My concern is that other owners of the 2019 CRV had the software update and found that while driving on the highway their car lost power. In am also on CarGuru site where there are multiple owners with the same problem. I will keep you updated."

- "Battery dies if car sits more than 2 days, American Honda has no results in resolving this problem, Told American Honda need the vehicle to go back and forth to the hospital, how do I resolve the problem, no solution,"[23]

93.    Another popular forum for complaints regarding cars, cargurus.com, also has numerous forums dedicated to issues relating to the Defect contained in Class Vehicles with several posts from drivers:

- "2019 Honda CRV Touring AWD battery has gone dead after being parked for 3 days in garage for the second time in less than 3 months.  Boosted vehicle twice and took it into dealer.  Could not find a problem battery, charging system and parasitic load all checked out.  Is this a common problem?"

- "Bought a 2019 new CRV honda in Jan 2019, from Burns Honda Marlton NJ twice I've had battery replaced despite the new software update. Battery replaced May 27 and July 10, 2019. They said it was a dead cell. Was told the first time it would be okay and now they are saying that the same. I don't think that they care. The problem still persists .It should be some legal action taken ie class action suit or lemon law. Replacing battery and software update did not help. Winter is not here yet"

- "My 2019 crv battery has died twice, even after the recall update. It cannot sit more than 3 days. They suggested I get a Jump Start kit or make arrangements for someone to come and start it when I'm out of town .....really!! UNACCEPTABLE. It is new and I'm not standing for this. I will get a lawyer or whatever I have to do, up to includiing [sic] a new car!!!! Right now I hate this vehicle and would not recommend a Honda to anyone."

- My 2019 CRV was not started for 1 week due to the corona virus issue. When I tried to start it, 3/26/2020, the battery was dead, measured 5 volts. The 19-039 software update meant to solve this problem had been installed the previous September. I contacted Honda support via email. Their brilliant suggestion was to wait until it happens again and have the car towed to the dealer for diagnosis of the problem. The same thing happened to my brother who also owns a 2019 CRV. He DID have his towed to the dealer, they

---

[23]    *Dead            Battery,        2019        Honda       CR-V*,   CARCOMPLAINTS.COM, https://www.carcomplaints.com/Honda/CR-V/2019/electrical/dead_battery.shtml   (last   visited May 24, 2021).

could find no cause. There is obviously a discharge problem that 19-039 did not solve and Honda will not admit to it. I now keep my CRV on a battery charger if I do not expect to drive it for more than two days. Sort of disappointing to have to do this with a car a little over 1 year old that I paid almost 30k for.[24]

94.    A separate forum on cargurus.com in which the driver asks "after sitting in my garage for 2 days why is the battery dead in my Honda 2019 crv?" has 280 responses, many of which are made by drivers complaining of similar issues related to the Defect found in Class Vehicles:

- "My battery went dead after two days onTuesday ...went to dealer , I am the 4 th one reporting the problem..dealer told me that engineers are working on the problem"

- "have the same problem with my crv 2019I have it 3 weeks and two times went completely dead. Dealer replaced battery the first time , the second time that said it's something with the software. They said software needs updating should have the problem fixed in two months. I want them to take the care back. I am not paying for something I can't drive unless I jump it."

- "My dealer would not give me a new battery unless I paid him $165 for one. I had 127 miles on it, they charged it up and said the battery was ok and the next morning it was dead, so I bought a jump starter, hope they get something going on it soon be cause a new $35K crv should start. This is my 3rd Honda crv and the LAST."

- "This is my problem too, bought it January 7 and in a few days it will be two months. Still not fixed. It has been dead 8 times to date. It goes dead in 3 days or less in the garage, nothing is left turned on. It has been to the dealer for several days a couple times, and sent back cause "nothing was found wrong with it". Finally they got the battery to go dead for them and put in a larger battery. That worked well for a few days and now it also goes dead. So we have to drive it every day to put some charge back in. I also bought a Jumpit pack which is helpful. But why should I have to do all this? Mine is a 2019 Honda CRV - EX. Honda I am asking politely "Will you fix my car very soon or replace it without charging me $3000" as I was told it

---

[24] *2019 honda crv battery drain*, CARGURUS, https://www.cargurus.com/Cars/Discussion-t84281_ds1013927 (last visited May 24, 2021).

would take to get into another car? I already paid cash for this one so better treatment to this guest would be a big plus."

- "I'm having the same issue with my battery drainage!!! I'm so upset! It will be 30 days tomorrow since I've had the car! I'm not sure if I should return it or what???"

- "Same thing happened to me about 2 weeks after I bought mine. Jumped it and made an appointment with the dealership because odd things were happening after that such as heat not working well, etc. They determined the battery was low and also told me the same thing someone else here said - it's a problem with one of the systems running a scan. A software fix should be out in a month - in the meantime, after turning the car off turn it on again immediately and then back off. That should prevent the scan from running. That was 4 days ago and so far it has started.....but I'm in agreement that we shouldn't be having to do this for a brand new Honda product."[25]

95. And, as detailed herein, several of the posts in this forum reference reporting the issues directly to Honda's customer service division, providing Honda with direct knowledge of the Defect and the hazards associated with the Defect.

96. A popular Honda forum for CR-V owners, crvownersclub.com also contains several complaints from drivers caused by the Defect in Class Vehicles:

- "we also have a 17 CR-V. had to replace the battery this year."

- We have a 2017 CRV, that we had the issue with the battery draining, and had the TSB done about a year ago and it has been fine since then, until the other morning. Wife went to start it, and it was dead, we jumped it off, and she went to work (30mile commute), that evening it cranked, but slowly. The next morning it was dead, jumped it off, she went to work, that evening it barely cranked but did and she drove the 30 miles home. After she got home, I thought it was probably the battery, and I'd just put a new battery in even though it was under warranty. Went to the parts place, and they tested the battery, and it tested fine. At the parts place it cranked fine, about 4 times, like it was fully charged. We went across the street, and got gas,

---

[25] *battery*,     CARGURUS,     https://www.cargurus.com/Cars/Discussion-t84281_ds1000311?%20sntEmlId=2691151973#msg953400 (last visited May 24, 2021).

and went to crank it, and it would not turn over, and the lights were barely on. Tried to open the hatch to get the jumper cables and it would not open on its own, I had to pull the hatch up. I checked the connections at the battery, and they are tight, I tried to wiggle them, and they would not move. I really wish this thing had a volt meter. We've got an appointment with the dealer tomorrow. Any ideas??[26]

- I just had the battery issue after 2 years. I had to jump start my CRV each time. I had to pay 200.00 for a new battery because I was over the 36,000 miles. Pretty crappy after you pay money and only get 2 years on the battery. Shame on you Honda![27]

97.     A simple google search reveals several other forums with numerous complaints from drivers regarding the Defect in Class Vehicles.

### 4.     Complaints Made Directly to Honda's Customer Service Division

98.     In addition to the numerous complaints submitted to the NHTSA and posted on various consumer and car forums, Honda also learned of the Parasitic Drain Defect directly from complaints received by Honda's customer relations division.

99.     As part of its Global Honda Quality Standard, Honda had procedures in place to deal with "quality issues after sales" in which dealerships "collect quality information from customers in a timely manner."

100.     Honda utilizes a customer relations center which "receives feedback in the form of customer questions, suggestions, requests and complaints 365 days a year."  And to "ensure that

---

[26] *Battery/Starting issue 2017 CRV*, CR-V OWNERS CLUB, https://www.crvownersclub.com/threads/battery-starting-issue-2017-crv.199757/ (last visited May 24, 2021).

[27] *Battery/Starting issue 2017 CRV*, CR-V OWNERS CLUB, at 2, https://www.crvownersclub.com/threads/battery-starting-issue-2017-crv.199757/page-2 (last visited May 24, 2021).

this valuable information is put to good use in Honda's operations, the facility shares it in a timely manner with the company's R&D, manufacturing, service and sales departments."

101.    "Honda has established a Quality Center to bring together the various components of our organization concerned with product market quality information to enhance the functions of 'preventing quality issues' and 'quickly detecting and resolving quality issues when they occur' on a global scale."

102.    Honda also maintains a Technical Research & Support ("TRS") Group at its California headquarters which is responsible for, among other things, identifying and investigating potential defects in Honda vehicles.

103.    Upon information and belief, Honda's customer relations division received numerous reports of the Parasitic Drain Defect and the premature failure of Class Vehicle batteries.

104.    In fact, drivers referenced reports made directly to Honda's customer service division in posts made on many online forums in which they were discussing the Defect in Class Vehicles, providing Honda with direct knowledge of the Defect and the hazards associated with the Defect:

- "Everyone having this battery drainage problem please call Honda and report it at 1-809-999-1008 x155. This is to Consumer Services, I believe. They took all of the dates the story etc. They gave me a case number and the report will go to Case Management. I was told they would call me in 1-2 days. I was on the phone with them for about an hour. I have no idea what they will do for me, if anything, but they need to know how widespread this problem is. Don't count on the dealership to report it. My car has been towed 5 times all through Honda Roadside assistance but only 2 of the 5 dates had a service report filed from the dealership. Write down the dates your car was dead and what the outcome was. Like was it towed to dealership, what did they say, was it jumped and you drove it. All of it. Write it out on paper or keep a running document on your computer or on your phone calendar. You will need all of this in case you decide to pursue

something through the lemon law in your state. I refuse to be stuck with this car! It's been a very very productive morning."

- "I also called HONDA CUSTOMER SERVICE AND ASK THEM TO FIND OUT WHY THE BATTERY WOULD DIE AFTER SITTIG IN MY GARAGE FOE 2 DAYS AND SHE SAID THEY WERE AWARE OF THE DEAD BATTERY PROBLEM, BUT HAD NO ANSWER FOR IT. SHE SAID TO TALK TO THE DEALER AND I TOLD HER I did 3 times and they had no answer for it, I got a case Number. Big Deal."

- We purchased our CRV on 2/21. On the morning of 3/3 it would not start due to a dead battery. I jump started it and let it run to charge the battery back up. On the morning of 3/4 it would not start again. Jumped it and drove to the dealership. They tested the battery and said it was OK. They stated this was a known design problem due to the evaporative emissions system trying to test the gas tank overnight. They said to keep the gas tank more than 3/4 filled and it would be OK. This means filling the tank every night. Filled the tank. On the morning of 3/5, no start again. We brought it to the dealership and got a loaner Civic to drive for the rest of the month. The evap test should not run with more than 3/4 tank of gas. The evap test should not run when the ambient temperature is below freezing. Overnight temperatures currently are in the single digits and teens. It should not be running this test. There is no current fix for this condition. We have about 600 miles on our new car that we cannot use. I have called Honda and started a case, we will see what happens next. If you have a car with this problem, call Honda, let them know about it and get a case number. Keep a log of all events involving your car and the people/companies you contact.[28]

### 5.    Dealership Repair Records and Replacement Parts Sales Data

105.    Honda also has direct knowledge of the Defect as it collects and analyzes field data including service reports and repair records as well as orders for new batteries for Class Vehicles.

106.    As all of Honda's service centers are required to order replacement parts such as batteries directly from Honda, Honda knew or should have known about the Defect and risk of

---

[28] *battery*,          CARGURUS,          https://www.cargurus.com/Cars/Discussion-t84281_ds1000311?%20sntEmlId=2691151973#msg953400 (last visited May 24, 2021).

premature failure due to the high number of replacement batteries and other parts that were ordered to address the issue.

107.    The increase in orders of batteries and other parts necessary to fix damage caused by the parasitic drain Defect contained in Class Vehicles should have alerted Defendant that this is a widespread issue that poses numerous safety issues.

### 6.    Warranty and Post-Warranty Claims

108.    Honda's warranty department reviews and analyzes warranty data submitted by its authorized dealerships in order to identify defects in its vehicles. When a repair is made under warranty (or warranty coverage is requested), Honda must be provided with detailed documentation of the problem.

109.    As Honda's new vehicle warranty covers the electrical system and batteries of Class Vehicles, claims made regarding battery failure as a result of the Defect would have been reported to Honda.

110.    And, although Honda began sending notices about a no-start condition in certain Class Vehicles in February 2017 and later initiated a battery collection program, Honda failed to disclose the existence and nature of the Defect to consumers, and failed to provide a permanent and reliable solution to the Parasitic Drain Defect.  As a result, Plaintiffs and Class Members are left with vehicles that do not meet the safety, reliability, or quality standards touted by Defendant.

111.    Had Plaintiffs and the Class Members known about the Defect, they would not have purchased or leased their Class Vehicles or would have paid significantly less.

### E.     Honda Failed to Warn Consumers of the Parasitic Drain Defect

112.    Despite its knowledge of the Defect in the Class Vehicles, Defendant actively concealed the existence and nature of the Defect from Plaintiffs and Class members.  Specifically, Defendant failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)     any and all known material defects or material nonconformity of the Class Vehicles, including the defects pertaining to the battery;

(b)     that the Class Vehicles, including the battery, were not in good in working order, were defective, and were not fit for their intended purposes;

(c)     that the Class Vehicles and batteries were defective; and

(d)     that the defect posed significant safety issues to drivers.

113.    Instead of disclosing the Defect to consumers, Honda concealed this material information from consumers and continued to tout the quality, safety, and reliability of Class Vehicles.

### F.     Honda Failed to Develop a Permanent and Reliable Solution to the Defect

114.    Honda has yet to provide owners and lessees a permanent and reliable solution to the Defect or implement a recall on Class Vehicles.  Instead, through a series of internal service bulletins, Honda has instructed authorized dealers to update internal software or replace dead batteries, neither or which provides an adequate remedy to the parasitic draining Defect nor allows the Class Vehicles to live up to the quality, safety, and reliability standards so often touted by Honda.  Honda did not disclose the true nature and scope of the Defect to consumers.

115.    For example, on February 22, 2017, Honda filed an "Engineering Request for Investigation" with the NHTSA stating that it was "investigating certain 2016-2017 Accord V6s

with a customer complaint of a no-start condition that requires the 12V battery to be replaced.  To fully understand the cause of this condition, [Honda] would like to collect specific parts from the vehicle prior to you attempting a repair of any kind."[29]

116.    The next day, Honda sent a message to all Honda service managers/ advisors with the subject "Request for Parts: 2016-2017 Accord V6 12V Battery Failure" requesting specific parts where a battery test indicated that battery replacement was needed.  Neither document identified the basis for Honda's decision to collect the vehicle batteries other than customer complaints of a no-start condition.

117.    The information regarding the investigation or battery collection was not shared with Plaintiffs or other consumers.

118.    On March 6, 16, and 27, 2017, and June 30, 2017, Honda issued additional messages regarding the same issue to all Honda service managers/ advisors.

119.    Honda's communication with its dealerships regarding battery issues was not limited to the Accord.

120.    On March 10, 2017, Honda issued a "Tech Line Summary Article" notifying dealerships that it had conducted an "investigation" into 2017 CR-Vs being brought in for weak or dead batteries, yet the vehicles and battery "check out ok."[30]  Honda stated that it "found that a software bug in the VSA [Vehicle Stability Assist] system may be keeping it awake when the

---

[29]   NHTSA ID No.: 10108050, Manufacturer Communication Number: AER17020B, available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108050-9340.pdf (last visited May 24, 2021).

[30]   NHTSA ID No.: 10108281, Manufacturer Communication Number: ATS170301, available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108281-9340.pdf (last visited May 24, 2021).

ignition is turned to OFF.  This can cause a 350 mA parasitic draw that may result in a weak or dead battery."  Honda stated that it "found that this issue appears to happen only when a certain shut down procedure is done, and it's rare when it does."  Although it acknowledged the issue, Honda did not have a "fix" and instead suggested that "this parasitic draw can be avoided by setting the electric parking brake before turning the ignition to OFF."  Honda then instructs to "Be sure to let the service advisors know about this so they can inform any customers coming in for this issue."

121.    Thus, consumers who brought their cars in for repairs were led to believe that there was a software issue and that a fix would be coming.  Unfortunately for Plaintiffs and other consumers this "fix" never came.

122.    Honda issued Service Bulletin 17-032[31] on June 14, 2017, which warned dealerships that 2017 CR-Vs "may have an intermittent 350mA current draw after the vehicle is shut off" and that as a result "[t]he vehicle does not start due to a low battery."  Honda stated that the "possible causes" for the parasitic draw was that the "VSA software logic may not allow the VSA modulator-control unit to shut down correctly and go into sleep mode after the vehicle is shut off.  This can happen if the electronic parking brake (EPB) is applied within 3 to 4 seconds of the vehicle being shut off or if the EPB switch is held for a 3 to 4 second duration when the vehicle is off."  Honda's proposed "corrective action" was to "[u]pdate the VSA modulator-control unit, do the VSA sensor neutral position memorization (ALL SENSOR), set the tire pressures to the driver's door jamb label cold inflation values, and do the TPMS calibration procedure."

---

[31]   NHTSA ID No.: 10108868; available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108868-9999.pdf (last visited May 24, 2021).

123.    However, once again, the proposed "corrective action" did not provide a permanent or reliable solution to the Defect nor rendered the Class Vehicles safe and reliable.

124.    On October 24, 2018, Honda announced that it had launched a battery collection program for 2017-2018 CR-Vs.[32]  This time, Honda's "Service Engineering" department sent a message to "Honda Dealers," instructing the Dealers to ship the batteries to Honda and to contact Honda's TRS Group for more information if the dealership "replaced an OEM battery on a qualified vehicle."

125.    On March 29, 2019, Honda issued Service Bulletin 19-039, regarding 2019 CR-Vs with the statement that the "vehicle fails to start after being parked for an extended period."[33] Honda explained that "[a]fter the vehicle is parked for an extended period, the PCM begins an evaporative system leak check after meeting certain criteria.  Under certain conditions, it may not return to sleep mode, causing the battery to discharge."  Honda proposed similar "corrective action":  "Update the PCM with the latest PGM-FI software.  If the customer indicates the vehicle failed to start, clear DTCs and do the VSA sensor neutral position memorization.  If the vehicle does not start, check the battery using the GR8 diagnostic station, clear DTCs, and do the VSA sensor neutral position memorization. Based on the GR8 test result, charge or replace the battery."

126.    Once again, this "corrective action" failed to provide a permanent or reliable solution to the Parasitic Defect.

---

[32]   NHTSA ID No.: 10147183, Manufacturer Communication Number: APaS10242018901, available at https://static.nhtsa.gov/odi/tsbs/2018/MC-10147183-9999.pdf (last visited May 24, 2021).

[33]   NHTSA ID No.: 10156620, Manufacturer Communication Number: A19-039, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10156620-0001.pdf (last visited May 24, 2021).

127.    Also on March 29, 2019, Brad Ortloff, a Honda "Manager of Auto Campaigns and Recalls" issued a communication to "All Honda Sales, Service, & Parts Managers, and Personnel," "announcing a Product Update for certain 2019 CR-V vehicles to address a concern related to a possible low battery state of charge and/or no start after the vehicle has been parked."[34]  Honda stated that "[t]he FI-ECU[, which] checks for EVAP leaks 5 hours after vehicle shutdown.  Due to a programming error, this system may not go back into sleep mode afterwards.  As a result, the battery may drain if this condition exists for an extended period of time."  Honda once again suggested that battery replacement may be necessary.

128.    Honda sent another message to Honda Service Managers on April 16, 2019, stating that "[Honda] has been collecting batteries from [2018-2019 Accords and 2017-2018 CR-Vs] under certain conditions.  If you have replaced an OEM battery on a qualified vehicle, please follow the procedure below."[35]  Service Managers were instructed to ship the batteries to Honda and to contact Honda's TRS Group for more information if the dealership "replaced an OEM battery on a qualified vehicle."

129.    On August 30, 2019, Honda issued an Owner Notification Letter for 2019 CR-Vs, warning:  "After the vehicle is parked for an extended period, the powertrain control module (PCM) begins an evaporative system leak check after meeting certain criteria.  Under certain

---

[34]   NHTSA ID No.: 10156621, Manufacturer Communication Number: ABOM03292019, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10156621-0001.pdf (last visited May 24, 2021).

[35]   NHTSA ID No.: 10159033, Manufacturer Communication Number: APaS04162019903, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10159033-0001.pdf (last visited May 24, 2021).

conditions, the PCM will not return to sleep mode, and may ultimately result in a dead battery. This is not an indication of a leak in the evaporative system."[36]  Honda once again suggested that a software update was the solution to the problem.

130.    On December 17, 2019, Honda issued an update for Service Bulletin 19-039 which expanded the number of 2019 CR-Vs subject to the bulletin.[37]

131.    Honda knew that the proposed remedies provided in the various service bulletins and messages to the dealerships are insufficient and fail to correct the Parasitic Drain Defect found in the Class Vehicles.  Honda knew that replacing the batteries and/or updating the software in Class Vehicles did not provide a permanent or reliable solution to the Defect.

132.    To be sure, even after taking the corrective action suggested by Honda, drivers continued to report problems associated with the Defect such as battery failure.

133.    Instead of providing a permanent and reliable solution to the Parasitic Drain Defect, Honda left consumers with a vehicle that is unreliable and unsafe to operate as a result of the Defect.

### G.    The Damage Caused by the Parasitic Drain Defect

134.    Plaintiffs and Class members purchased or leased the Class Vehicles based on their reasonable but mistaken belief that their Vehicles were of high quality, reliable, safe, and free of defects.  However, the Class Vehicles delivered by Honda were not those for which Plaintiffs and

---

[36]   NHTSA ID No.: 10164478, Manufacturer Communication Number: ONLO4G08302019, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10164478-0002.pdf (last visited May 24, 2021).

[37]   NHTSA ID No.: 10169977, Manufacturer Communication Number: A19-039, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10169977-0001.pdf (last visited May 24, 2021).

Class members bargained.  Rather, the Class Vehicles suffered from a common defect – the parasitic drain Defect.  Had Plaintiffs and Class members known of the Defect, they would have either: (a) paid substantially less for the Class Vehicles; (b) required an immediate remedy that restored the Vehicles to the conditions bargained for; or (c) not purchased or leased the Vehicles.

135.    As a result of the disparity between the quality of the Class Vehicles negotiated for and the Vehicles actually received, Plaintiffs and Class members suffered economic harm.  This economic harm can be quantified as: (a) the economic value of an effective remedy that restores the Class Vehicles to their expected conditions (or the economic harm from the lack of that remedy); (b) the discount that Plaintiffs and Class members would have required to accept the Vehicles in their actual condition; and/or (c) the diminished value of the Vehicles.

136.    Plaintiffs and Class members paid premiums to purchase and lease the Class Vehicles as a result of the quality, reliability, and safety representations made by Honda.  A vehicle purchased or leased with the reasonable expectation that it is of high quality and reliable as advertised is worth more than a vehicle known to be subject to the problems or risks associated with the Defect.  Plaintiffs and Class members were harmed from the day they drove their Class Vehicles off the lot because they did not get what they paid for – a high-quality, safe and reliable vehicle free from defects.

137.    As a direct result of Honda's misrepresentations and omissions, Plaintiffs and Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.  Plaintiffs and Class members paid a premium for the Class Vehicles, which Honda advertised as being high-quality, safe and reliable, and received Vehicles that contained a known but concealed defect that posed significant safety hazards and reliability issues to consumers.  Honda was

unjustly enriched because it obtained and retained monies paid by Plaintiffs and Class members who paid a price for the Class Vehicles that was higher than the value of the vehicles they received in return.

138.    As a result of Honda's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose the Defect and the problems associated therewith, owners and lessees of the Class Vehicles have suffered losses in money and/or property.

**H.    Honda Breached Express Warranties Covering Class Vehicles**

139.    The Class Vehicles sold and leased by Honda are covered by a 3-Year/36,000-Mile New Vehicle Limited Warranty which includes repairs on "any part that is defective in material or workmanship under normal use."  The warranty period begins once "[t]he vehicle is delivered to the first purchaser by a Honda automobile dealer" or "[t]he vehicle is leased."

140.    The electrical system and original battery included in Class Vehicles are covered by the New Vehicle Limited Warranty.

141.    Honda also provides a "Replacement Battery Limited Warranty" which covers batteries purchased from a Honda automobile dealer for 100 months.  Under the Replacement Battery Limited Warranty, during the first 36 months, defective replacement batteries are to be replaced at no cost.  For the remaining 64 months, the warranty provides for a credit towards the purchase of a replacement battery.  The amount of credit provided decreases each year, and the owner/lessee is responsible for labor costs after the first three years.

142.    Buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

143.     The Defect is covered under Honda's warranties.  Honda breached these warranties by failing to provide a permanent and reliable remedy to the Defect in the Class Vehicles.

144.     When owners and lessees bring their car for repairs needed as a result of the Defect, Honda does not disclose the true nature and scope of the Defect, and only provides temporary fix solutions such as software updates or replacement batteries.  Since the solutions provided by Honda do not remedy the underlying Defect, the need for further repairs or replacement batteries is inevitable, even after the expiration of Honda's warranties.

145.     Since Class Members have not been provided with a permanent and reliable repair of the Defect, Honda has breached the express and implied warranties covering Class Vehicles.

146.     Honda's attempt to disclaim or limit these express warranties is unconscionable and unenforceable here as Honda knowingly sold or leased a defective product without informing consumers about the Parasitic Drain Defect.  The time limits contained in Honda's warranty periods are also unconscionable and inadequate to protect Plaintiffs and other Class members. Plaintiffs and other Class members had no meaningful choice in determining these limitations, the terms of which unreasonably favored Honda.  A gross disparity in bargaining power existed between Honda and Class members, and Honda knew of the Defect at the time of sale.

147.     The Defect impacts the core functionality of the Class Vehicles as it leaves owners and lessees with vehicles that are inoperable and unsafe and unreliable.  Clearly this is not was consumers anticipated when purchasing or leasing a new car.

I.     **Fraudulent Concealment Allegations**

148.     Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Honda responsible for

disseminating false and misleading marketing materials and information regarding the Class Vehicles. Honda is necessarily in possession of, or has access to, all of this information.

149.    Plaintiffs' claims arise out of Honda's fraudulent concealment of the Defect and the battery failure, safety and reliability issues it causes, despite Honda's representations regarding the quality, safety, and reliability of the Class Vehicles.

150.    To the extent that Plaintiffs' claims arise from Honda's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. Plaintiffs allege that at all relevant times, including specifically at the time they purchased or leased their Class Vehicles, Honda knew, or was reckless in not knowing, of the Defect; Honda was under a duty to disclose the Defect based upon its exclusive knowledge of it, and Honda never disclosed the Defect to Plaintiffs or the public at any time or place or in any manner.

151.    Plaintiffs make the following specific fraud allegations with as much specificity as possible, although they do not have access to information necessarily available only to Honda:

(a)    *Who*: Honda actively concealed the Defect from Plaintiffs and Class members while simultaneously touting the quality, safety and reliability of the Class Vehicles. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Honda responsible for such decisions.

(b)    *What*: Honda knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Defect. Honda concealed and failed to disclose the Defect while making contrary representations about the quality, safety, reliability, and other attributes of the Class Vehicles.

(c)     *When*: Honda concealed and omitted material information regarding the Defect at all times while making representations about the quality, safety, and reliability of the Class Vehicles continuing to this day.  Honda still has not disclosed the truth about the Defect and has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles.  When consumers brought their vehicles to Honda complaining of the Defect, Honda denied any knowledge of or an adequate repair for the Defect.

(d)     *Where*: Honda concealed and omitted material information regarding the Defect in every communication with Plaintiffs at all times while making contrary representations about the quality, safety and reliability of the Class Vehicles.  Plaintiffs are aware of no document, communication, or other place or thing in which Honda has disclosed the truth about the Defect in the Class Vehicles.  Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manual, or on Honda's website.

(e)     *How*: Honda concealed the Defect from Plaintiffs and Class members and made representations about the quality, safety and reliability of the Class Vehicles.  Honda actively concealed the truth about the existence and nature of the Defect from Plaintiffs and Class members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and Honda promised in its marketing materials that the Class Vehicles have qualities that they do not have, and moreover, made representations in its warranties that it knew were false, misleading, and deceptive.

(f)     *Why*: Honda actively concealed material information about the Defect in Class Vehicles for the purpose of inducing Plaintiffs and Class members to purchase or lease the Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about

the quality, safety and reliability of the Vehicles.  Had Honda disclosed the truth, for example, in

its advertisements or other materials or communications, Plaintiffs (and reasonable consumers)

would have been aware of it, and would not have bought the Class Vehicles or would have paid

less for them.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Fraudulent Concealment Tolling

152.    Any applicable statute of limitation has been tolled by Honda's knowledge, active

concealment, and denial of the facts alleged herein, which behavior is ongoing.  Honda continues

to conceal the full and complete nature of the Defect to this day.  Plaintiffs and the members of the

Class could not have reasonably discovered the true, latent nature of the Defect. Plaintiffs' claim

was thus tolled pursuant to the discovery rule and for fraudulent concealment.

### B.    Estoppel

153.    Honda was, and is, under a continuous duty to disclose to Plaintiffs and Class

members the true character, quality, and nature of the Class Vehicles.  Honda failed to disclose the

existence of the parasitic drain Defect and actively concealed the true character, quality, and nature

of the Class Vehicles while knowingly making representations about the quality and reliability of

the Vehicles.   Plaintiffs and Class members reasonably relied upon Honda's knowing and

affirmative representations and/or active concealment of these facts.  Based on the foregoing,

Honda is estopped from relying on any statutes of limitation in defense of this action.

### C.    Discovery Rule

154.    The causes of action alleged herein did not accrue until Plaintiffs and Class

members discovered that their Class Vehicles contained the Defect.

155.     However, Plaintiffs and Class members had no realistic ability to determine that their vehicle suffered from the parasitic drain Defect.

156.     Even after experiencing repeated battery failure, Plaintiffs and Class members had no reason to know this was caused by a defect in the Class Vehicles because of Honda's active concealment of the Defect.  Within any applicable statutes of limitation, Class Members could not have discovered through the exercise of reasonable diligence that Honda was concealing the conduct complained of herein and misrepresenting the true qualities of the Class Vehicles.

157.     Class Members did not know facts that would have caused a reasonable person to suspect that there was a parasitic drain Defect affecting their vehicle's battery and an ordinary person would be unable to appreciate that the vehicle was defective.

158.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

## VII.    CLASS ALLEGATIONS

159.     Plaintiffs bring this action pursuant to Rule 23(a) and (b)(2)-(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated as members of the following Nationwide Class (under the laws of the state of Florida) and State Classes defined as:

**Nationwide Class:**

All persons or entities in the United States (including its territories and the District of Columbia) that purchased or leased a Class Vehicle.  Class Vehicles consist of Honda CR-V model years 2017-2019 and Honda Accord model years 2016-2019.

**Florida Class:**

All persons or entities that purchased or leased a Class Vehicle within Florida or that purchased or leased a Class Vehicle and reside in Florida.

160.     Excluded from the Class are Honda; its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of Honda; Honda's dealers; Class Counsel and their employees; the judicial officers and their immediate family members and associated court staff assigned to this case; and all persons within the third degree of relationship to any such persons.

161.     Certification of Plaintiffs' claims for Class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

162.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Fed. R. Civ. P. 23.

163.     **Numerosity**.  Rule 23(a)(1) of the Federal Rules of Civil Procedure:  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.   While Plaintiffs are informed and believe that there are at least thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Honda's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

164.     **Commonality and Predominance**.  Rules 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

(a)     whether Honda engaged in the conduct alleged herein;

(b)      whether Honda advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

(c)      whether Honda distributed Class Vehicles with a Defect;

(d)      whether Honda knew of the Defect but failed to disclose the problem and its consequences to their customers;

(e)      whether Plaintiffs and Class members overpaid for their Class Vehicles and/or did not receive the benefit of the bargain;

(f)      whether Plaintiffs and Class members are entitled to damages and other monetary relief and, if so, in what amount;

(g)      whether Honda's alleged conduct constitutes the use or employment of an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation within the meaning of the applicable state consumer fraud statutes;

(h)      whether Honda has been unjustly enriched under applicable state laws;

(i)      whether Honda has violated its express warranties to Plaintiffs and Class members;

(j)      whether Honda actively concealed the Defect in order to maximize profits to the detriment of Plaintiffs and Class members; and

(k)      such other common factual and legal issues as are apparent from the allegations and causes of action asserted in this Complaint.

165.   **Typicality**.  Rule 23(a)(3) of the Federal Rules of Civil Procedure:  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Honda's wrongful conduct as described above.  All

claims seek recovery on the same legal theories and are based upon Honda's common course of conduct.

166.   **Adequacy**.  Rule 23(a)(4) of the Federal Rules of Civil Procedure:  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Class' interests will be fairly and adequately protected by Plaintiffs and their counsel.

167.   **Declaratory Relief**.  Rule 23(b)(2) of the Federal Rules of Civil Procedure:  Honda has acted or refused to act on grounds generally applicable to Plaintiffs and Class members, thereby making appropriate declaratory relief, with respect to each Class as a whole.

168.   **Superiority**.  Rule 23(b)(3) of the Federal Rules of Civil Procedure:  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Honda, so it would be impracticable for Class members to individually seek redress for Honda's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.   CLAIMS

**A.      Claims Brought on Behalf of the Nationwide Class**

### NATIONWIDE COUNT I

### FRAUDULENT CONCEALMENT

169.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

170.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, which is materially uniform in all states.   In the alternative, Plaintiffs bring this claim on behalf of each State Class under the law of each state in which Plaintiffs and Class members purchased or leased the Class Vehicles.

171.    Honda fraudulently concealed and suppressed material facts concerning the quality of the Class Vehicles and the existence of the Defect.

172.    Despite advertising the Class Vehicles as safe, reliable, and being of high quality, Honda knew when it manufactured, marketed, and sold or leased the Class Vehicles that Class Vehicles suffered from a design and/or manufacturing defect that reduced the Class Vehicles' value and subjected the Class Vehicles to parasitic draining and that rendered the Class Vehicles unreliable and posed significant safety hazards to drivers.

173.    Honda failed to disclose these facts to consumers at the time it manufactured, marketed, and sold or leased the Class Vehicles and Honda knowingly and intentionally engaged in this concealment in order to boost sales and revenue, maintain its competitive edge in the automobile market, and obtain windfall profit.   Through its active concealment and/or suppression of these material facts, Honda sought to increase consumer confidence in the Class Vehicles, and

to falsely assure purchasers and lessors of the same that the Vehicles were of sound quality and that Honda was a reputable manufacturer that stands behind the automobiles it manufactures. Honda engaged in this behavior to protect its profits, avoid warranty replacements, avoid recalls that would impair the brand's image, cost it money, and undermine its competitiveness in the automobile industry.

174.    Plaintiffs and Class members were unaware, and could not reasonably discover on their own, that Honda's representations were false and misleading, or that it had omitted material facts relating to the Class Vehicles.

175.    Honda had a duty to disclose, rather than conceal and suppress, the full scope and extent of the Defect because:

(a)    Honda had exclusive or far superior knowledge of the Defect and concealment thereof;

(b)    the facts regarding the Defect and concealment thereof were known and/or accessible only to Honda;

(c)    Honda knew that Plaintiffs and Class members did not know about, or could not reasonably discover, the Defect and concealment thereof; and

(d)    Honda made representations and assurances about the qualities of the Class Vehicles, and about the existence of a repair for the Defect that were misleading, deceptive, and incomplete without the disclosure of the fact that the Class Vehicles suffered from a latent and inherent design and/or manufacturing defect.

176.    These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase or lease the Class Vehicles, and because they

substantially reduced the value of the Class Vehicles purchased or leased by Plaintiffs and Class members.  Whether the Class Vehicles were defective, of sound quality, safe, reliable, and whether Honda stood behind such Vehicles, would have been an important factor in Plaintiffs' and the Class members' decisions to purchase or lease the Vehicles.  Plaintiffs and Class members trusted Honda not to sell them vehicles that were defective and significantly overpriced.

177.    Honda intentionally and actively concealed and suppressed these material facts to falsely assure consumers that their Class Vehicles were free from known defects, as represented by Honda and reasonably expected by consumers.

178.    Plaintiffs and Class members were unaware of these omitted material facts and would have paid less for the Class Vehicles, or would not have purchased/leased them at all, if they had known of the concealed and suppressed facts.  Plaintiffs and Class members did not receive the benefit of their bargain due to Honda's fraudulent concealment.  Plaintiffs' and Class members' actions in purchasing the Class Vehicles were justified.  Honda was in exclusive control of the material facts, and such facts were not known or reasonably knowable to the public, Plaintiffs, or Class members.

179.    Plaintiffs and Class members relied to their detriment upon Honda's reputation, fraudulent misrepresentations, and material omissions regarding the quality, safety, and reliability of the Class Vehicles.

180.    As a direct and proximate result of Honda's deceit and fraudulent concealment, including its intentional suppression of true facts, Plaintiffs and Class members suffered injury.  They purchased and leased Class Vehicles that had a diminished value by reason of Honda's

concealment of, and failure to disclose, the Defect.  Plaintiffs and Class members also paid substantial money to (unsuccessfully) repair the Defect.

181.    Accordingly, Honda is liable to the Nationwide Class and/or State Classes for their damages in an amount to be proven at trial.

182.    On information and belief, Honda has still not made full and adequate disclosure and continues to defraud Plaintiffs and Class members.  Honda also continues to conceal material information regarding the Defect.

183.    Honda's acts were done deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class members' rights.  Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**NATIONWIDE COUNT II**

**UNJUST ENRICHMENT**

184.    Plaintiffs reallege and incorporate by reference paragraphs 1-168 as though fully set forth herein.

185.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class under the common law of unjust enrichment, which is materially uniform in all states.  In the alternative, Plaintiffs bring this claim on behalf of each State Class under the law of each state in which Plaintiffs and Class members purchased or leased Class Vehicles.

186.    Plaintiffs bring this claim as an alternative to the contractual warranty claims asserted below and in the event that Plaintiffs prevail on their claims that any contract with Honda (including any express warranty) was fraudulently induced and/or Plaintiffs prevail in proving that

the warranties cannot be enforced by Honda due to Honda having provided the warranties only after entering into a contract with a purchaser or lessor, or due to Honda's intentional and deceptive efforts to conceal the Defect and avoid its warranty obligations.

187.    Honda has received millions in revenue from the sale of the Class Vehicles.

188.    This revenue was a benefit conferred upon Honda by Plaintiffs and Class members, individuals living across the United States.

189.    Honda manufactured, marketed, and sold defective Class Vehicles to Plaintiffs and Class members, while actively concealing the vehicles' known defects and touting their quality, safety, and reliability.

190.    Honda benefitted from selling defective cars for more money than they were worth, at a profit, and Plaintiffs have overpaid for the cars and, in some instances, been forced to pay to (unsuccessfully) repair the Defect.

191.    Plaintiffs and Class members elected to purchase or lease the Class Vehicles based on Honda's misrepresentations, deception, and omissions. Honda knew and understood that it would (and did) receive a financial benefit, and voluntarily accepted the same, from Plaintiffs and Class members when they elected to purchase or lease the Class Vehicles.

192.    The Class Vehicles' defect, and Honda's concealment of the same, enriched Honda beyond its legal rights by securing through deceit and falsehood millions of dollars in revenues.

193.    Therefore, because Honda will be unjustly enriched if it is allowed to retain the revenues obtained through falsehoods, deception, and misrepresentations, Plaintiffs and each Class member are entitled to recover the amount by which Honda was unjustly enriched at his or her expense.

194.    Accordingly, Plaintiffs, on behalf of themselves and each Class member, seek damages against Honda in the amounts by which it has been unjustly enriched at Plaintiffs' and each Class member's expense, and such other relief as this Court deems just and proper.

## NATIONWIDE COUNT III

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE §17200, *ET SEQ.*)

195.    Plaintiffs reallege and incorporate by reference paragraphs 1-168 as though fully set forth herein.

196.    California's Unfair Competition Law ("UCL"), Business and Professions Code §17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

197.    In the course of its business, Honda violated the UCL by engaging in the following unlawful, fraudulent, and unfair business acts and practices:

(a)    selling and leasing the Class Vehicles to Plaintiffs and Class members with knowledge that the design and/or production processes, including the electrical system, used in Class Vehicles was defective, and intentionally concealing the Defect from Plaintiffs and Class members;

(b)    marketing the Class Vehicles as defect-free and making affirmative representations regarding the quality of the Class Vehicles and the quality and benefits of the design and/or production processes, including the safety, reliability, and quality of the Class Vehicles; and

(c)    violating California statutory and common law prohibiting false advertising, fraudulent concealment, and breach of express warranty.

198.    Honda's scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiffs and Class members, and Honda misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiffs and the Class members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, Plaintiffs and the Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

199.    Plaintiffs and Class members suffered ascertainable loss and actual damages as a direct and proximate result of Honda's misrepresentations and its concealment of and failure to disclose material information.

200.    Pursuant to CAL. BUS. & PROF. CODE §17200, Plaintiffs and Class members seek any such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE §§17203 and 3345, and any other just and proper relief available under the UCL.

**NATIONWIDE COUNT IV**

**VIOLATIONS OF THE CALIFORNIA CONSUMER
LEGAL REMEDIES ACT
(CAL. CIV. CODE § 1750, *ET SEQ.*)**

201.    Plaintiffs reallege and incorporate by reference paragraphs 1-168 as though fully set forth herein.

202.    The Class Vehicles are "goods" as defined in CAL. CIV. CODE §1761(a).

203.    Plaintiffs and the California Class members are "consumers" as defined in CAL. CIV. CODE §1761(d).  Plaintiffs, Class members, and Honda are "persons" as defined in CAL. CIV. CODE §1761(c).

204.    California's Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE §1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

205.    In the course of its business, Honda violated the CLRA by knowingly misrepresenting and/or intentionally concealing material facts regarding the quality of the Class Vehicles and the existence of the Defect.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Honda violated the following enumerated provisions of the CLRA:

(a)    CAL. CIV. CODE §1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

(b)    CAL. CIV. CODE §1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

(c)    CAL. CIV. CODE §1770(a)(9): Advertising goods with intent not to sell them as advertised; and

(d)    CAL. CIV. CODE §1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

206.    Honda's scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiffs and Class Members, and Honda misrepresented, concealed, or failed to

disclose the truth with the intention that Plaintiffs and Class Members would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, Plaintiffs and Class members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

207.   Plaintiffs and Class members had no way of discerning that Honda's representations were false and misleading, or otherwise learning the facts that Honda had concealed or failed to disclose.

208.   Honda had an ongoing duty to Plaintiffs and Class members to refrain from unfair and deceptive practices under the CLRA in the course of its business.  Specifically, Honda owed Plaintiffs and Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from Plaintiffs and Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

209.   Plaintiffs and Class members suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealment, misrepresentations, and/or failure to disclose material information.

210.   Plaintiffs and Class members are entitled to recover actual and punitive damages under the CLRA pursuant to CAL. CIV. CODE §1780(a), and an additional award of up to $5,000 to each Plaintiff and Class member who is a "senior citizen."

211.   On May 28, 2021, a notice letter was sent on behalf of Plaintiffs and the Class to Honda pursuant to CAL. CIV. CODE §1782(a) seeking equitable relief.  If Honda fails to remedy its

unlawful conduct within the requisite time period, Plaintiffs and the Class seek all damages and

relief to which they are entitled.

## NATIONWIDE COUNT V

## VIOLATIONS OF THE FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §17500, *ET SEQ.*)

212.     Plaintiffs reallege and incorporate by reference paragraphs 1-168 as though fully

set forth herein.

213.     California Bus. & Prof. Code §17500 states:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose
of real or personal property . . . to induce the public to enter into any obligation
relating thereto, to make or disseminate or cause to be made or disseminated . . .
from this state before the public in any state, in any newspaper or other publication,
or any advertising device, . . . or in any other manner or means whatever, including
over the Internet, any statement . . . which is untrue or misleading, and which is
known, or which by the exercise of reasonable care should be known, to be untrue
or misleading.

214.     Honda caused to be made or disseminated through California and the United States,

through advertising, marketing, and other publications, statements that were untrue or misleading,

and which were known, or which by the exercise of reasonable care should have been known to

Honda, to be untrue and misleading to consumers, including Plaintiffs and Class members.

215.     Honda has violated CAL. BUS. & PROF. CODE §17500 because the

misrepresentations and omissions regarding the quality, safety, and reliability of the Class Vehicles

and the Defect contained in Class Vehicles as well as the associated safety risks and repair costs

that result from it as set forth in this Complaint were material and likely to deceive a reasonable

consumer.

216.     Honda has also violated CAL. BUS. & PROF. CODE §17500 because the misrepresentations and omissions regarding the existence of a repair for the Defect and Defendant's ability and intention to render such a repair as set forth in this Complaint were material and likely to deceive a reasonable consumer.

217.     Plaintiffs and Class members have suffered an injury in fact, including the loss of money or property, as a result of Honda's unfair, unlawful, and/or deceptive practices.   In purchasing or leasing their Class Vehicles, Plaintiffs and Class members relied on the misrepresentations and/or omissions of Honda with respect to the quality, safety, and reliability of the Class Vehicles as well as the existence of a repair for the Defect.   Honda's representations turned out to be false because as a result of the Defect that could result in battery failure, stalling while operating the vehicle under normal driving conditions, and the failure of essential safety features, the Class Vehicles are unsafe, unreliable, and not of high quality.   Additionally, no permanent and reliable repair exists for the Defect.   Had Plaintiffs and Class members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiffs and Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

218.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business.   Honda's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

219.     Plaintiffs, individually and on behalf of the Class, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money

Honda acquired by unfair competition, including restitution and/or restitutionary disgorgement and for such other relief as may be appropriate.

## NATIONWIDE COUNT VI

### BREACH OF EXPRESS WARRANTY
### (CAL. COM. CODE §§2313 AND 10210)

220.    Plaintiffs reallege and incorporate by reference paragraphs 1-168 as though fully set forth herein.

221.    Honda is and was at all relevant times a "merchant" with respect to the Class Vehicles under CAL. COM. CODE §§2104(1) and 10103(c), and a "seller" of the Class Vehicles under §2103(1)(d).

222.    With respect to leases, Honda is and was at all relevant times a "lessor" of motor vehicles under CAL. COM. CODE §10103(a)(16).

223.    The Class Vehicles are and were at all relevant times "goods" within the meaning of CAL. COM. CODE §§2105(1) and 10103(a)(8).

224.    In connection with the purchase or lease of all Class Vehicles, and as detailed above, Honda provided Plaintiffs and Class members with the express warranties described above in paragraphs 139-141.

225.    Honda's warranties formed a basis of the bargain that was reached when Plaintiffs and Class members purchased or leased their Class Vehicles.

226.    Honda breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and Class members with Class Vehicles containing a Defect that was never disclosed to Plaintiffs and Class members; (b) failing

to repair or replace the Class Vehicles at no cost within the warranty periods; and (c) supplying products and materials that failed to conform to the representations made by Honda.

227.    Plaintiffs and Class members have given Honda a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Honda can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

228.    Thus, Honda's warranties fail of their essential purpose, and the recovery of Plaintiffs and Class members is not limited to their remedies.

229.    Accordingly, Plaintiffs and Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

230.    As a direct and proximate result of Honda's breach of its express warranty, Plaintiffs and Class members have been damaged in an amount to be determined at trial.

231.    Honda was provided notice of the issues raised in this Count and this Complaint, as detailed above.

B.      **Claims Brought on Behalf of the Florida Class**

**FLORIDA COUNT I**

**VIOLATION OF FLORIDA'S UNFAIR
& DECEPTIVE TRADE PRACTICES ACT
(FLA. STAT. §501.201, *ET SEQ.*)**

232.    Plaintiffs reallege and incorporate by reference paragraphs 1-168 as though fully set forth herein.

233.    Plaintiffs Andre Cruz, Mitchell Bryon Pazanki, Dayane Tessinari, and Fernanda Nunes Ferreira (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the Florida Class.

234.    Plaintiffs and the Florida Class members are "consumers" within the meaning of FLA. STAT. §501.203(7).

235.    Honda is engaged in "trade" or "commerce" within the meaning of FLA. STAT. §501.203(8).

236.    The Florida Deceptive and Unfair Trade Practices Act ("Florida DUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. §501.204(1).

237.    In the course of its business, Honda violated the Florida DUTPA by knowingly misrepresenting and/or intentionally concealing material facts regarding the quality, safety and reliability of the Class Vehicles, including the existence of the Defect, and the existence of a permanent and reliable repair for the Defect.  Specifically, in marketing, offering for sale/lease, and selling/leasing the defective Class Vehicles, Honda engaged in one or more of the following unfair or deceptive acts or practices prohibited by FLA. STAT. §501.204(1):

(a)     representing that the Class Vehicles have characteristics or benefits that they do not have;

(b)     representing that the Class Vehicles are of a particular standard and quality when they are not;

(c)     advertising the Class Vehicles with the intent not to sell them as advertised;

(d)     engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

(e)     using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles.

238.    Honda's scheme and concealment of the true characteristics of the Class Vehicles were material to Plaintiffs and the Florida Class, and Honda misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiffs and the Florida Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, Plaintiffs and the Florida Class would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

239.    Plaintiffs and the Florida Class members had no way of discerning that Honda's representations were false and misleading, or otherwise learning the facts that Honda had concealed or failed to disclose.

240.    Honda had an ongoing duty to Plaintiffs and the Florida Class members to refrain from unfair and deceptive practices under the Florida DUTPA in the course of its business.

Specifically, Honda owed Plaintiffs and the Florida Class members a duty to disclose all the material facts concerning the Class Vehicles because it possessed exclusive knowledge, it intentionally concealed such material facts from Plaintiffs and the Florida Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

241. Plaintiffs and the Florida Class members suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealment, misrepresentations, and/or failure to disclose material information.

## FLORIDA COUNT II

### BREACH OF EXPRESS WARRANTY
### (FLA. STAT. §§672.313 AND 680.21)

242. Plaintiffs reallege and incorporate by reference paragraphs 1-168 as though fully set forth herein.

243. Plaintiffs Andre Cruz, Mitchell Bryon Pazanki, Dayane Tessinari, and Fernanda Nunes Ferreira (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the Florida Class.

244. Honda is and was at all relevant times a "merchant" with respect to the Class Vehicles under FLA. STAT. §§672.104(1) and 680.1031(3)(k), and a "seller" of the Class Vehicles under §672.103(1)(d).

245. With respect to leases, Honda is and was at all relevant times a "lessor" of motor vehicles under FLA. STAT. §680.1031(1)(p).

246. The Class Vehicles are and were at all relevant times "goods" within the meaning of FLA. STAT. §§672.105(1) and 680.1031(1)(h).

247.   In connection with the purchase or lease of all Class Vehicles, and as detailed above, Honda provided Plaintiffs and the Florida Class members with express warranties as described above in paragraphs 139-141.

248.   Honda's warranties formed a basis of the bargain that was reached when Plaintiffs and the Florida Class members purchased or leased their Class Vehicles.

249.   Honda breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Florida Class members with Class Vehicles containing defects in the materials and workmanship that were never disclosed to Plaintiffs and the Florida Class members; (b) failing to repair or replace the Class Vehicles at no cost within the warranty periods; and (c) supplying products and materials that failed to conform to the representations made by Honda.

250.   Plaintiffs and the Florida Class members have given Honda a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Honda can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

251.   Thus, Honda's warranties fail of their essential purpose, and the recovery of Plaintiffs and the Florida Class members is not limited to their remedies.

252.   Accordingly, Plaintiffs and the Florida Class members assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the Florida Class members of the purchase or lease price of all Class Vehicles currently owned and leased, and for such other incidental and consequential damages as allowed.

253.     As a direct and proximate result of Honda's breach of its express warranty, Plaintiffs and the Florida Class members have been damaged in an amount to be determined at trial.

254.     Honda was provided notice of the issues raised in this Count and this Complaint, as detailed above.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Nationwide and State Classes, respectfully request that the Court certify the proposed Nationwide and State Classes, including designating the named Plaintiffs as representatives of the Nationwide Class and the State Classes and appointing the undersigned as Class Counsel, and the designation of any appropriate issue classes, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in Plaintiffs' favor and against Honda including the following relief:

A.     A declaration that any applicable statutes of limitations are tolled due to Honda's fraudulent concealment and that Honda is estopped from relying on any statutes of limitations in defense;

B.     Restitution, compensatory damages, and costs for economic loss and out-of- pocket costs;

C.     Punitive and exemplary damages under applicable law;

D.     Reimbursement and compensation of the full purchase price for any repairs or replacements purchased by a Plaintiffs or Class member to remedy the Defect;

E.     A determination that Honda is financially responsible for all Class notices and the administration of Class relief;

F.      Any applicable statutory or civil penalties;

G.      An order requiring Honda to pay both pre-judgment and post-judgment interest on any amounts awarded;

H.      An award of reasonable counsel fees, plus reimbursement of reasonable costs, expenses, and disbursements, including reasonable allowances for the fees of experts;

I.      Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

J.      Any such other and further relief the Court deems just and equitable.

## X.      DEMAND FOR JURY TRIAL

255.    Plaintiffs and Class members hereby demand a trial by jury, pursuant to Fed. R. Civ. P. 38(b), of all issues so triable.

DATED:  May 28, 2021                     Respectfully submitted,

**ROBBINS GELLER RUDMAN
    & DOWD LLP**


_____
                    s/ Mark J. Dearman
                    MARK. J. DEARMAN

MARK. J. DEARMAN
Florida Bar No. 0982407
ERIC S. DWOSKIN
Florida Bar No. 112459
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
mdearman@rgrdlaw.com
edwoskin@rgrdlaw.com

WITES LAW FIRM
MARC A. WITES
Florida Bar No. 24783
4400 North Federal Highway
Lighthouse Point, FL  33064
Telephone:  866/558-9631
mwites@witeslaw.com

Attorneys for Plaintiff